# Wirsing *v.* Pennsylvania Hotel & Sanitarium Company.

*Mechanics' liens—Curtilage—Separated lots.*

1. By the Act of June 4, 1901, P. L. 431, curtilage, to be regarded as appurtenant to a building and bound by a mechanic's lien filed against it, is "such as is reasonably needed for the general purpose" for which the structure is erected, and belongs to the same owner. As a rule, curtilage does not extend beyond the lot on which the building is erected, but when more land is reasonably needed for the general purpose of the structure and at the time the same is being erected the owner of it intends that another lot in addition to the one on which it is being built shall be included in the curtilage and constitute a part of the same, it is reasonable that a mechanic's lien should extend to both.

2. A mechanic's lien may be maintained against a hotel property and a lot separated from the hotel by a railroad and intervening private lands, where it appears that on the lot was a mineral spring, and that it was the intention of the owners to use the hotel in connection with the

spring as a sanitarium, and to construct on the lot where the spring was situated a plant for supplying light and heat to the hotel.

Argued Oct. 13, 1909. Appeal, No. 151, Oct. T., 1909, by The Southside Trust Company of Pittsburg, Trustee in Bankruptcy for Pulaski Springs Hotel Company, Successor in Title to the Pennsylvania Hotel & Sanitarium Company, Owner, from order of C. P. Lawrence Co., Sept. T., 1908, No. 13, dismissing petition to limit and define curtilage in case of Harry M. Wirsing v. Pennsylvania Hotel & Sanitarium Company, Owner or Reputed Owner. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Petition to limit and define curtilage. Before PORTER, P. J.

The opinion of the Supreme Court states the facts of the case.

*Error assigned* was order dismissing the petition.

*W. D. Wallace*, with him *Wm. McElwee, Jr., G. W. Williams* and *A. J. Edwards*, for appellant, cited: Worthington v. Cambridge Springs Hotel Co., 24 Pa. C. C. Rep. 281.

*Robert K. Aiken*, for appellee.

OPINION BY MR. JUSTICE BROWN, January 3, 1910:

On June 12, 1906, Harry M. Wirsing, the appellee, filed a mechanic's lien against a building and two lots of ground, naming the Pennsylvania Hotel & Sanitarium Company as owner or reputed owner. He obtained a judgment on this lien on June 3, 1908, and on March 3, 1909, the South Side Trust Company, trustee in bankruptcy of the Pulaski Springs Hotel Company, successor in title to the Pennsylvania Hotel & Sanitarium Company, presented a petition to the court below, praying for an order limiting and defining the curtilage bound by the appellee's mechanic's lien and the judgment thereon. The two lots of ground against which the lien was filed as curtilage to the building are separated by a railroad

and private properties and are distant from each other about 225 feet. The contention of the appellant is that the curtilage should be confined to land embraced in the lot on which the building was to be erected. Under the existing conditions the court below held otherwise, and this appeal comes from the dismissal of the petition.

The answer to the petition, to which no replication was filed, avers that at the time the appellee entered into the contract with the Pennsylvania Hotel & Sanitarium Company on which his claim is founded it was the owner of the two lots described in the lien, on one of which there is located a spring or well of water; that on this lot there were buildings, a boiler, etc., and in connection therewith the said company proposed to erect and construct a large sanitarium or hotel; that the said sanitarium or hotel was to be used in connection with the said spring or well of water; that it was the purpose and design of the company to heat and light the hotel from a heating and power system on the lot on which the spring was located and to supply the hotel or sanitarium with water from said well or spring, which possessed medicinal properties; that it was planned, arranged and intended by the company that the two lots should constitute the curtilage appurtenant to the hotel and sanitarium, and they were such as were reasonably needed for the general purpose for which the said hotel or sanitarium was being constructed; that each of said lots formed a part of the single business plant of the company and constituted the curtilage appurtenant to the hotel or sanitarium; that it was planned, arranged and intended by the company to connect the lot on which said well or spring was located and the buildings thereon with the lot on which the said hotel or sanitarium was to be erected; that in pursuance of instructions given him by the company, the appellee made his plans to connect said lots; that the entire property became and was a single business plant; that the two lots had been purchased by the company for the purpose of a single business plant; and that the said hotel or sanitarium, as planned, arranged and intended by the company, would have no value except in connection with the spring which was located but a short distance from it. The only witness called by

the appellant in support of its petition admitted that the two lots were deeded at the same time to the Pennsylvania Hotel & Sanitarium Company, which had been organized for the purpose of conducting a hotel with the spring in connection with it, and that the running of the hotel in connection with the spring constituted one single undertaking on the part of the company. From the testimony of this witness and that of the appellee, considered in connection with the averments in the answer, the court below found the following facts, to which no exceptions were filed: "The hotel was to be connected with a boiler house to be located on the spring property by an eight inch and other pipes through which the heating plant in the hotel was to be supplied with hot water. It seems the hotel building was to be constructed for the use chiefly of those who came to receive benefit from the use of the medicinal water of the spring, and the spring property and the hotel property were to be operated and managed by the same person. Without the spring the hotel property would be of comparatively little value, but operated together the patronage was expected to be quite large. . . . It was clearly the purpose of the owner of these parcels of land to use them in connection with each other; the hotel was for the accommodation of those who desired treatment and to enjoy the beneficial results derived from the use of the medicinal waters of the spring located on the spring property. Pipes were to be extended under ground from one to the other and both properties were to be operated, managed and controlled by one person, the defendant. No doubt the successful operation of the spring was greatly handicapped because of the lack of good hotel accommodations for those who desired treatment and to make use of the water, while a hotel of the proportions shown and described in the plans and specifications located in a small village like Pulaski would hardly be considered for a moment, unless it was to be operated in conjunction with the mineral springs which were located on the other property described in the lien filed. This was the general purpose for which the two parcels of land were to be used and they formed the parts of the single business plant."

By the Act of June 4, 1901, P. L. 431, curtilage, to be regarded as appurtenant to a building and bound by a mechanic's lien filed against it, is "such as is reasonably needed for the general purpose" for which the structure is erected, and belongs to the same owner. As a rule, curtilage does not extend beyond the lot on which the building is erected, but when more land is reasonably needed for the general purpose of the structure and at the time the same is being erected the owner of it intends that another lot in addition to the one on which it is being built shall be included in the curtilage and constitute a part of the same, it is reasonable that a mechanic's lien should extend to both. The value of a building after its erection depends upon the ability of the owner, or those claiming under him, to put it to its intended use, and, if it cannot be put to such use without having the curtilage manifestly intended for it by the owner at the time he induced the labor and material to go into it, such curtilage ought to be regarded as appurtenant to it, even if it does include land not physically connected with the lot on which the building is erected. The legislature might have provided otherwise, but it has not by the act of 1901. Under the old mechanic's lien act of June 16, 1836, the lien of a mechanic extended to the ground covered by the building "and to so much other ground immediately adjacent thereto" as might have been necessary for the ordinary and useful purposes of the building. But there is no such limitation in our present act, and it is, therefore, a question under conditions existing in any particular case what other land of the owner of the building in addition to the lot upon which it is being erected, shall be bound by a mechanic's lien, as being "reasonably needed for the general purpose" of the structure.

Appeal dismissed at appellant's costs.