## Fox's Estate.

*Mark T. Milnor*, for exceptants; *Homer Hummel Strickler*, contra.

Fox, J., November 26, 1930.—This matter comes before us on exceptions filed to the report of commissioners appointed by this court to define the curtilage of two certain houses devised in the last will and testament of Mary E. Fox, late of the Borough of Hummelstown, deceased.

By her last will and testament the said decedent provided in item four thereof as follows:

"I bequeath to my daughters, Marion Fox Dippell, and Lorene Fox Wagner the house in which I live as well as the so-called Market House on Water Street, and to my son, William W. Fox, the house on Hanover Street in which he now lives in Hummelstown."

Item five of the will provides:

"The rest of my estate and effects shall be divided among my heirs or sold and then divided, share and share alike, excepting that I direct that before

such final decision be made each of my grand-children who survive me shall be given outright $100.00."

The said Mary E. Fox died on July 13, 1930. Her husband, William R. Fox, died on January 5, 1930, seized and possessed, amongst other things, of land situate in the Borough of Hummelstown, bounded and described as follows:

"Beginning at the southeast corner of Long Alley and Water Street; thence east by Long Alley one hundred and twelve (112) feet to an alley; thence south by said alley forty (40) feet to land of William R. Fox; thence west by land of William R. Fox one hundred and twelve (112) feet to Water Street; thence north by Water Street forty (40) feet to the place of beginning. Having thereon erected a one-story frame dwelling house Nos. 21 and 23 S. Water Street.

"Beginning on Water Street at a corner of tract No. 2 aforesaid; thence east by said land one hundred twelve (112) feet to an alley; thence south by said alley forty (40) feet to a ten (10) feet wide alley; thence west by said alley one hundred and twelve (112) feet to Water Street; thence north by Water Street forty (40) feet to the place of beginning."

On May 14, 1930, Scott R. Wagner and Victor R. Dippell, executors of William R. Fox, deceased, by deed recorded in Deed Book L, vol. 22, page 579, granted and conveyed, *inter alia,* the above-mentioned lots to John H. Greenawalt, the two lots being therein described in separate descriptions, and on the said date the said Greenawalt by deed recorded in Deed Book L, vol. 22, page 588, granted and conveyed unto Mary E. Fox the two lots described as two separate tracts.

The record evidence discloses that the lot on the corner of Water Street and Long Alley was conveyed by the said William R. Fox and wife on September 13, 1892, to Lizzie H. Rhan, and that after several conveyances of the same on April 2, 1906, it was conveyed by the then owners to D. H. Landis, who with his wife conveyed it to the Hummeltown Market Company, which company on April 1, 1909, by deed recorded in Deed Book L, vol. 22, page 576, granted and conveyed it to William R. Fox, who held it and the adjoining lot described as tract No. 3 in the deeds to and from the said Greenawalt until the death of the said William R. Fox, after which his executors sold and conveyed both in one deed but by separate descriptions to the said Mary E. Fox. Before and at the time of the death of the said William R. Fox and until this time there were and are erected upon the lot mentioned as the Market House lot two one-story tenement houses known as Nos. 21 and 23 Water Street, the lot in question having nothing erected thereon.

The commissioners found that the said adjoining lot is a curtilage of the said houses known as Nos. 21 and 23 Water Street erected on said Market House lot.

The Supreme Court in the case of Wirsing *v.* Pennsylvania Hotel and Sanitarium Co., 226 Pa. 234, has said:

"By the Act of June 4, 1901, P. L. 431, curtilage, to be regarded as appurtenant to a building and bound by a mechanic's lien filed against it, is 'such as is reasonably needed for the general purpose' for which the structure is erected, and belongs to the same owner. As a rule, curtilage does not extend beyond the lot on which the building is erected, but when more land is reasonably needed for the general purpose of the structure and at the time same is being erected the owner of it intends that another lot in addition to the one on which it is being built shall be included in the curtilage and constitute a part of the same, it is reasonable that a mechanic's lien should extend to both.

58

The value of a building after its erection depends upon the ability of the owner, or those claiming under him, to put it to its intended use, and, if it cannot be put to such use without having the curtilage manifestly intended for it by the owner at the time he induced the labor and material to go into it, such curtilage ought to be regarded as appurtenant to it, even if it does include land not physically connected with the lot on which the building is erected."

While the case just above cited was one relating to the Mechanics' Lien Act, we think it is applicable to the instant case for the purpose of determining what is regarded as a curtilage in the law of Pennsylvania.

We are of the opinion that in the instant case the conclusion of the commissioners that the adjoining lot to the Market House lot is a curtilage of the latter is error. One of two conditions must appear: First, that the adjoining lot is reasonably needed for the general purposes of the structure erected on the adjoining lot, or, second, that the owner of both lots manifested in some way or other that the adjoining lot was a part and parcel of the other. The commissioners, after having examined the said houses and lots, reported in substance that the adjoining lot is a curtilage of the Market House lot, basing their conclusion on these facts: There is no fence between the said tenement houses and the said adjoining lot; a statement had been made to the commissioners that former occupants of said house had built a barn upon the adjoining lot which has since been removed; the adjoining lot was used as a playground by the children of a former tenant and also as a garden by a former tenant, and the adjoining lot is necessary for the convenient use of each of said houses, Nos. 21 and 23 Water Street, and, therefore, the adjoining lot is a curtilage of the said lot known as the Market House lot and designated by the testatrix in her devise as "the so-called Market House on Water Street."

We are unable to concur with the commissioners in their conclusion. The fact that William R. Fox, the owner of the larger piece of ground, laid it out in lots, including the one in question, each having a frontage of forty feet on Water Street with the same depth, and sold all but the lot in question, clearly manifested an intention that the latter lot should not be a curtilage of whatever might be erected on the Market House lot. The same inference may be drawn from the fact that when the said two houses, Nos. 21 and 23 Water Street, were erected by the said William R. Fox on the Market House lot no door was placed on the side of the house adjoining the lot in question, nor was anything at the time manifested that showed an intention to make a curtilage of the same. Nor do we think it is necessary for the general purposes of the houses Nos. 21 and 23 Water Street, which are small one-story tenement houses and have no necessary requirement for a forty-foot side lot. That there is no fence between the said Market House lot does not indicate in itself that the adjoining lot was intended to be a curtilage; there is nothing to indicate that there ever was a fence between these lots and it would be an unusual thing to erect fences between lots in a plot of lots. That the lot was used as a playground by the children of former tenants and also as a garden by some of the tenants is not conclusive. It may have been so used by the children and the former tenant by the sufferance of the then owner. The same is true with respect to the barn alleged to have been built upon the said lot by a former occupant of one of the houses. The barn, the commissioners say, has since been removed; that may indicate that it was not permitted or suffered to be there by the then owner, William R. Fox. The commissioners also conclude that because the said William R. Fox and wife had conveyed the

Market House lot to the aforesaid Rahn on September 13, 1892, and after divers other conveyances repurchased it in April, 1909, the two lots were merged into one. This is not a reasonable conclusion. The same reason for their division when they were owned by William R. Fox pertains later on when he made the purchase and later in the absence of anything to show a different intention. The fact that the assessor had assessed the two lots as one plot of ground is not conclusive that the owner intended the adjoining lot to be a curtilage of the Market House lot. The act of the assessor is not that of the owner unless the latter authorizes the assessor so to do or unless the owner signifies his intention to make the adjoining lot a curtilage in some positive way. The fact that in the various conveyances as we have pointed out down into the testatrix, the two lots were described separately and apart from one another is convincing that they were held by the respective owners as distinct and separate tracts of land and thus conveyed. After the purchase by the testatrix there is nothing to manifest an intention on her part to treat them differently.

Wherefore, we are of the opinion that the commissioners erred in their finding and conclusion and that the exceptions should be sustained and the report cannot be approved by the court.

And now, November 26, 1930, upon due consideration, it is hereby ordered, adjudged and decreed that the exceptions filed to the commissioners' report are sustained, the report of the commissioners as to the lot in question is disapproved and the said lot, having a frontage of forty feet on Water Street with a uniform depth of one hundred and twelve feet, adjoining the said Market House lot which is situated at the southeast corner of Water Street and Long Alley, having a frontage of forty feet on Water Street and running eastwardly a uniform width of one hundred and twelve feet, two houses, to wit, Nos. 21 and 23 Water Street, being erected thereon, is not a curtilage of the said lot last above described.

From Homer L. Kreider, Harrisburg, Pa.