[Sac. No. 4733. In Bank.—October 27, 1933.]

ANGELO ANSELMO et al., Respondents, v. SAMUEL SEBASTIANI et al., Appellants.

Charles M. Jones and Albert Picard for Appellants.

Glenn West for Respondents.

THE COURT.—After consideration of this cause, we hereby adopt as our opinion herein a portion of the opinion prepared by Mr. Justice Plummer for the honorable District Court of Appeal, Third Appellate District, as follows, to wit:

"The plaintiffs had judgment against appellants for the foreclosure of a lien for and on account of the erection by the plaintiffs of a certain building upon a tract of land

belonging to the defendants situate in the town of Woodbridge, county of San Joaquin. From this judgment the defendants Sebastiani and Woodbridge Vineyard Association prosecute this appeal.

"It appears from the record that on or about the 6th day of December, 1929, the defendant Salvatore Castorina entered into an agreement with the plaintiff to erect a certain structure known as a 'preserving building', to be situate on the premises belonging to the appellants. The building was erected on a portion of the premises which had been leased by the owners to Salvatore Castorina. It appears that at the time mentioned the appellant Sebastiani had a contract for the purchase of the premises, from the appellant Woodbridge Vineyard Association, and on January 28, 1930, the premises involved herein were conveyed by the Woodbridge Vineyard Association to the appellant Samuel Sebastiani. The premises involved are described as two parcels of land, one containing 5.49 acres and the other as containing 2.5 acres. The parcels, however, are contiguous, and really constitute one tract, and at all the times herein mentioned was known as the 'Woodbridge Winery'. The premises upon which the preserving building was erected contained five other buildings, all used in connection with the winery. The building erected by the plaintiffs was to be used as a part of the plant. It was not, and is not in addition to any building theretofore erected and being used by the Woodbridge Winery, but was a building designed to be used in connection therewith in the storing and preservation of pumice, until such time as the pumice might be used in the manufacture of alcoholic and such other by-products as might be obtained therefrom. The pumice to be stored in the preserving building was the refuse of grapes, such as seeds and skins, after the juices had been extracted therefrom in the process of making grape juice and wine, carried on in the other buildings, the pumice then being conveyed from the building just referred to and stored in the building, and to be stored in the building erected by the plaintiffs known as the preserving building.

"The contract for the building was oral, and was upon a cost-plus basis, to wit: That the plaintiffs were to furnish all the material, labor, etc., erect the building according to plans

and specifications furnished by an architect, and were to receive as compensation 10 per cent in addition to the cost.

"After the completion of the building, payment not having been made therefor, the plaintiffs filed a lien in which it is set forth that the building cost the sum of $4,527.80, plus 10 per cent agreed to be paid to the plaintiffs for erecting the building, making a total sum of $4,980.58. Not having received payment, this action was begun for the foreclosure of the lien filed by the plaintiffs. Judgment went for the plaintiffs for the full amount of the lien plus 10 per cent, as just stated, together with interest from the date of the beginning of the action, less the sum of $500 paid on account.

"Upon this action the appellants contend that the building was not completed substantially according to the plans and specifications, and that the building was useless for the purposes for which it was constructed, etc.; that the area of land decreed to be sold was far in excess of the land containing a convenient space about the building required for its convenient use and occupation.

"It is further contended that the court was in error in allowing interest from the 18th day of March, 1930, the date of beginning of the action, and that the interest should have been allowed only from the date of the entry of judgment.

"The court found, upon conflicting evidence, that the building was erected according to the plans and specifications. Whether the building erected according to the plans and specifications was or was not, or is or is not adequate to serve the purposes for which it was built, is immaterial. The defendant Castorina furnished the plans and specifications, and directed the modifications thereof. The plaintiffs, as found by the court, constructed a building, as we have just stated, according to the plans and specifications. It would serve no useful purpose to review the conflicting testimony relative to certain alleged defects, and it suffices to state that a review of the testimony shows that the findings of the court are amply supported. The testimony is not set out in the briefs, but reference is made to the transcript which we have examined.

"The real controversy presented by the appellants relates to the area of land ordered sold, and the allowance of interest. The complaint, after describing the land upon which the buildings to which we have referred are situate,

and the erection of the preserving building, contains the following allegation: 'That all of said land is required for the reasonable and convenient use of said improvements and addition to said building and structure, to-wit: The addition to said winery and fruit juice factory.' . . .

"We will set forth the testimony showing the intended use of the building erected by the plaintiffs, as it relates to the other buildings situate and used on the same tract of land, being testimony of John T. Hunt, witness for plaintiff: 'Q. You have looked over this property, have you? A. Yes, sir. Q. Approximately 8 acres that is called for in the description set out in the claim of lien? A. Yes, sir. Q. And the buildings are on that property all told? A. Well, there is a big place where they keep all the wine vats, a winery in general. Q. And then there are office buildings? A. Yes, sir. A still house and the sherry house and this pulp house. Q. And there are roadways into the winery and out? A. Yes, sir; there would have to be to get around those buildings. Q. And also a spur track? A. Yes, sir. Q. And this preserving house which was built on these plans and specifications, which you and Anselmo built, is situated right next to the winery and the other buildings? A. Yes, right where they crush the grapes, within 16 or 20 feet. Q. How was it used in connection with the winery? A. You mean what they use the pumice for? Q. What is its connection with the rest of the building? A. In order to preserve the pumice after the juice is taken out of the grapes. Q. That is taken out of the grapes in the winery part? A. Yes, sir, and then this pumice is conveyed over a distance of about 15 or 20 feet and then dropped into this preserving house. Q. That is the house that you and Anselmo constructed? A. Yes. Q. How is it conveyed over? A. It has a little conveyor there. Q. Kind of an endless belt? A. And chain. Q. Do the winery and the preserving house use the same spur track? A. They would have to. Q. And the same offices? A. Yes. Q. And the same roadways where the trucks drive in there? A. Yes, sir. Q. Now, these buildings and improvements which you have mentioned, including the winery, office buildings and preserving house building and all other improvements which you have mentioned, practically cover the entire 8 acres? A. Yes, sir, the entire 8 acres. Q. Also a part

of the 8 acres there used for dumps, pumice piles? A. Yes, sir; instead of it being put out like that, it is put into this house.'

''The ground floor of the preserving house was approximately 26x63 feet in area. We do not find any statement of the height of the building. From the testimony which we have quoted it is clear that the preserving building was intended for use in connection with the other buildings constituting the plant known as the 'Woodbridge Winery'. That the roadways, spur tracks and drives referred to were and are all necessary for the use of the preserving building, and that at least a portion of the unoccupied tract of land described in the complaint was and is necessary for the piling of pumice and refuse matter after the alcoholic content and other by-products should be extracted therefrom. The pumice out of which the alcohol and by-products were to be extracted must come from other portions of the plant. The only testimony offered by the appellants on this question was that the preserving building stood at a distance of some 25 or 30 feet from the nearest structure on said tract of land. Not one word is offered concerning what might be necessary or convenient for its use, or as to any use to which said building might be devoted other than it was intended for preserving purposes, as we have stated. The preserving house, standing alone under the conditions disclosed, would have neither use nor salable value.

''Section 1185, Code of Civil Procedure, authorizes the court to include in the order of sale in foreclosing a lien, not only the land upon which the building or structure is erected, but also a convenient space about the same, or so much as may be required for the convenient use and occupation thereof. We may here state that the record shows the building was erected with the knowledge of the owner of the premises, and that no limiting notice as to responsibility was ever posted on the premises or filed as required by law. The lease under which the defendant Salvatore entered upon the premises contemplated the erection of the building involved in this action.

''Determining the area of land that shall be included in the order of sale upon the foreclosure of a lien for the erection of a building, is largely within the discretion of the trial court, and unless abused, will not be disturbed. The

determination of this area must take into consideration the intended use for which the building is erected. If erected for the purposes of use as a separate and distinct unit, then the area of land required for its convenient use may properly be limited only to an area necessary for ingress and egress, but if its use is dependent upon, and connected with the uses made of other buildings or the uses made of other portions of the tract of land upon which it is situate, then if all of the larger tract is required for the 'necessary and convenient use' of the building involved, such larger tract may properly be included in the order of sale.

"In the case of *California Corrugated Culvert Co.* v. *Stewart,* 215 Cal. 120 [8 Pac. (2d) 1013], the facts show the erection of a barn and the construction of an elevator to store a crop of rice that might be grown upon a tract of land embracing 729 acres. The trial court ordered a sale of the entire 729 acres. Subsequent thereto it made an order limiting the number of acres that should be sold. From this subsequent order the plaintiffs appealed. The last order was vacated and the cause remanded to the trial court to do one of two things: First: Enter judgment for the plaintiffs and the findings of fact and conclusions of law as originally made; or, second: To again proceed and determine the extent of the area required for the convenient use and occupation of the barn and elevator. The cause just referred to was, as here, tried upon the theory that the whole of the farm was necessary for the convenient use and occupation of the buildings. The elevator could not be used for conveying rice into the barn for storage purposes unless there was rice raised for that purpose; nor could the barn be used for the storage of rice without the rice first being produced. In other words, the holding of the court in such cases should find a basis in the uses and purposes for which the building is erected, in determining the area of land necessary and convenient for its use. A residence might only require sufficient land to afford ingress and egress, which would not be a rule applicable to buildings intended for other uses.

"The arguments of the appellants herein appear to be based upon the theory that all the land that can be included in an order of sale is only such as may be required for ingress and egress. As stated, the land required is a question

of fact to be determined by the trial court. (*California Corrugated Culvert Co.* v. *Stewart, supra.*)

"As stated in 17 California Jurisprudence, 154: 'The land about a building, required for its convenient use and occupation, is such as is necessary to the enjoyment of the building for the purpose of its construction. Accordingly, the use to which a building is to be put may determine the land necessary to its convenient use and occupation, but this does not include adjacent areas or structures necessary merely to create business or custom or furnish supplies for the enterprise conducted in the building.' The purpose for which the building in question was erected is so intimately and directly connected with the operations carried on in the adjacent buildings as to constitute it an essential part and parcel of the plant known as the 'Woodbridge Winery'. The work carried on in the preserving house could not be carried on disconnected with the processes conducted in the other buildings. Nor could the complete process of extracting all of the commercial elements from the grapes crushed be completed in the adjacent buildings without the use of the preserving house.

"Appellants call our attention to the case of *Gregg* v. *H. & M. Drilling Co., a corporation, et al.*, 92 Cal. App. 189 [267 Pac. 903], where it was sought to enforce a lien upon a larger tract of land, for the value of gravel placed upon a short strip of roadway leading thereto. The conclusion was that the strip of land could be used as a roadway, disconnected with the larger tract of land. In that case reference is first made to *Cowan* v. *Griffith*, 108 Cal. 244 [49 Am. St. Rep. 82, 41 Pac. 42], where an attempt was made to establish a mechanic's lien on a forty-acre tract of land upon which a residence had been constructed. Likewise, reference is made to the case of *Tunis* v. *Lakeport etc. Assn.*, 98 Cal. 285 [33 Pac. 63, 447], where an attempt was made to foreclose a mechanic's lien on a sixty-acre tract of ground upon which an hotel had been erected.

"In the case of *Cowan* v. *Griffith, supra,* the facts show that the residence could be occupied and used conveniently without any reference to the forty-acre tract. Likewise, in the case of *Tunis* v. *Lakeport etc. Assn., supra,* the facts show that the hotel could be used irrespective of the race track, corrals, etc., situate upon the sixty-acre tract of land.

There is a difference between the 'necessary and convenient use', which includes the purposes for which the building is erected, and a distinct and separate use which may prove profitable in the operation or use of the building on which the lien is sought to be foreclosed. The fact that the use might prove profitable cannot be considered unless it is a 'necessary and convenient use', and one contemplated in the erection of the building.

"Thus, as epitomized in 18 Ruling Case Law, page 948: 'Generally, however, a mechanic's lien is enforceable against the land on which the building or improvement stands and also the land thereabout, used with it, and necessarily or reasonably convenient to its use. As illustrating the different applications of this rule, it has been held in one case, under a statute extending a mechanic's lien on a building to the land necessary for the convenient use and occupation thereof, that the court cannot set aside forty acres with a dwelling as necessary for its convenient use, the court saying that the statute does not contemplate that the dwelling shall include lands sufficient to support the owner while living therein, while on the other hand, and on the idea that a farm is a unit and that it is immaterial whether it is large or small, a lien has been granted for farm buildings erected on a contiguous tract of 350 acres made up of several farms owned originally by different owners, where it was the intention to use the whole of the land with such buildings.'

"The question of use and purpose for which the improvement is intended, and therefore, the area of land that should be included in the order of sale, is well illustrated in the case of *Western Well Works Inc.* v. *California Farms Co.,* 60 Cal. App. 749 [214 Pac. 491], where it was held that a small circle of land surrounding a well capable of furnishing 2000 gallons per minute did not meet the requirements of 'necessary and convenient use', and the whole tract of land upon which the well was dug, and for which the well had a capacity of furnishing sufficient water, should be included within the order of sale. A mere showing that the nearest building to the structure erected by the plaintiffs is 25 or 30 feet away, has no bearing upon the question of 'necessary and convenient use' or the purposes for which the structure was erected. That the purposes and

intended· use for which the building is erected or improve-
ment made· is to be considered in determining the tract of
land necessary and convenient for its use, is fully sustained
by the extended notes appended to the case of *Wirsing* v.
*Pennsylvania Hotel & Sanitarium*, 226 Pa. 234 [75 Atl.
259], as reported in 26 L. R. A. (N. S.) 831.

■ ''Was it error for the court to allow interest from
the date of the filing of the complaint? The record shows
that shortly after the filing of the complaint, the plaintiffs
furnished to the defendants a bill of particulars showing
every item of cost incurred in the erection of the preserving
building. Section 3287, Civil Code, reads: 'Every person
who is entitled to recover damages, certain or capable of
being made certain by calculation, and the right to recover
which is vested in him upon a particular day, is entitled
also to recover interest thereon from that day,' etc. The
contention is made that the amount which the plaintiffs are
entitled to recover in this case is unliquidated, and there-
fore interest should not be allowed until the entry of judg-
ment. This contention, however, is not determinative of the
question of interest. If the amount of the indebtedness or
the amount owing can be calculated and determined from
the statements rendered by the plaintiffs to the defendants,
and that statement is found to be true and correct, it is a
matter of mere calculation. The court in the instant case
found the costs just as set forth by the plaintiffs in their
bill of particulars furnished the appellants.

''In 8 California Jurisprudence, 791, we find the follow-
ing: 'The fact that proof of the market value of goods
is required to establish the amount of a claim, does not
render it incapable of being made certain by calculation, so
as to prevent the allowance of interest under section 3287 of
the Civil Code. Nor will the proof of two market values,
as of goods if uninjured, and goods as injured, do so. The
fact that the amount due depends upon whether the plain-
tiff had a third or a half interest in a partnership, but is
certain in either case, does not render the amount un-
liquidable.· And the existence of a setoff or counterclaim
does not create such an uncertainty as will prevent the
allowance of interest, even though it be itself unliquidated.
A dispute as to the price agreed, or as to the amount of
work done or its cost, will not prevent the allowance of

interest. . . . Where the data necessary to determine the amount due are supplied to the debtor by an invoice or statement, he will be charged with interest for failure to pay.'

"Again, in 15 Ruling Case Law, 7, the rule is thus stated: 'While, as a general rule, interest is not allowable on unliquidated demands, yet it has frequently been held that interest may be allowed as damages, even in the case of unliquidated demands, where the latter are capable of ascertainment by calculation or where they may be determined by reference to well-established market values, together with computation.'

"It does not appear that the accuracy of the bill of particulars rendered by the plaintiffs to the appellants was questioned at the trial of this action. It was urged that certain work was not done, and that the work done was not of the value set forth in the bill of particulars, and a counterclaim was set up in the answer. All of these matters were found against the contention of the appellants. This brings the circumstances within the case of *McCowen* v. *Pew*, 18 Cal. App. 482 [123 Pac. 354], where, under similar circumstances, interest was allowed.

"The action in this case is not based wholly upon *quantum meruit;* it is based primarily upon the contract to pay the cost of the building, plus 10 per cent. The value of the building after its construction, or its adaptability to the uses and purposes intended are immaterial. The item of costs being presented, the amount thereof was easily ascertained. It appears that there was a payment of the sum of $500 made to the plaintiffs after the completion of the building, and some promises made as to the payment of the amount still remaining due to the plaintiffs. This we need not consider, further than to state that the court allowed a credit of $500 on the amount claimed by the plaintiffs. There is a difference between the amount claimed by the plaintiffs and the amount allowed by the court in the sum of $23.08. Appellants urge that this shows appellants' claim to be unliquidated and incapable of ascertainment by calculation. This sum is so negligible in quantity that we pass it by without further mention.

"The case of *Combs* v. *Eberhard*, 120 Cal. App. 25 [7 Pac. (2d) 338], may be distinguished from the case at bar.

In that case interest was allowed on account of claims and liens filed against the property belonging to the defendant, other than for work and labor and materials furnished by the contractor under the contract, and involved the question of *quantum meruit* only.

"Nor is the case of *Kimes* v. *Davidson Investment Co.*, 101 Cal. App. 382 [281 Pac. 639], controlling here. In the case just mentioned the defendant had breached its contract, and the plaintiff was suing for the value of the work and labor performed. It was clearly a case of *quantum meruit*. The amount due could not be calculated nor ascertained until the judgment of the court was entered.

"It may be considered that time of payment was not mentioned in the contract, but under the rule enunciated in 17 California Jurisprudence, page 220, the time would run from the date of filing the complaint, which date was taken by the trial court as the time from which interest should be calculated.

"Nor do we think that the case of *Mabrey* v. *McCormick*, 205 Cal. 667 [272 Pac. 289], precludes the allowance of interest to the plaintiffs in this action. The contract in that case was not upon a cost-plus basis, as is shown by the following statement: 'Plaintiffs claim interest from the date of the third bill rendered by them, at which time they state the amount due became certain. (Sec. 3287, Civ. Code.) Had the court found for them, this contention would be sound. Here, however, the record shows no refusal of defendants to settle with plaintiffs under the true contract. Defendants being ready and willing to settle therefor, were not at fault, because plaintiffs not only abandoned the work, but insisted upon recovery upon a different basis. In other words, by reason of the action of the plaintiffs, the amount due was unliquidated until determined by judgment of the court. Hence, interest prior to judgment as damages was not allowable.' (Citing cases.) The opposite is the truth in the instant case as found by the trial court. We conclude that interest was properly allowed."

The judgment is affirmed.