[Civ. No. 3145.   Fourth Dist.   Mar. 8, 1945.]

W. R. SPALDING LUMBER COMPANY (a Corporation), Respondent, v. HARRY FRADKIN et al., Appellants.

Russell & Heid for Appellants.

McFadzean & Crowe for Respondent.

BARNARD, P. J.—This is an action to foreclose a mechanic's lien. The controversy grows out of the construction of a house on a 20-acre ranch near Strathmore, which is owned by the defendants Fradkin. The lumber company has its head office in Visalia and has branches in several places in Tulare County, including one at Strathmore. One D. E. Thompson was manager of this branch and his son, the defendant Ernie Thompson, was the contractor who built this house. Five other actions involving other claimants were, by stipulation, tried with this action and one judgment was entered covering all six actions. The appeal has been presented and will be considered as though the Spalding Lumber Company were the only plaintiff.

The house on the Fradkins' ranch burned down in the fall of 1940. Early in 1941, they started preparations to rebuild and on March 20, 1941, they entered into a written contract with Ernie Thompson, under which he agreed to build the house according to certain plans and specifications for a price of $5,616.50. The Fradkins applied to the Bank of America at Porterville for an F. H. A. loan of $3,600. The loan was approved by the F. H. A. authorities and on May 15, 1941,

the Fradkins executed to the bank a note for that amount and a trust deed covering the 20-acre ranch, which was recorded on May 20, 1941. Early in June, the manager of this bank suggested to the Fradkins that a faithful performance bond from the contractor should be secured. They took this up with Ernie Thompson and he suggested that he would secure a letter from the plaintiff guaranteeing the completion of the house and that no liens would be filed, in lieu of furnishing a bond. This was satisfactory to the bank and Ernie Thompson secured such a letter from his father, which was delivered to the bank. This letter, dated June 12, 1941, was addressed to the Bank of America at Porterville, and reads as follows:

"Gentlemen:

"This is to advise, that the Harry Fradkin-Job, Ernest Thompson General Contractor, to be built near Strathmore, Calif. is a W. R. Spalding Lumber Company, in a Bundle Job, and are pleased to have you work with us in this line of handling Home Building's, and if you will kindly make all Checks covering advances on the Loan, as the Job progresses to W. R. Spalding Lumber Company, and Ernest Thompson, the bills will all be paid through our office, and there will not be any Liens, against this Contract.

"Yours very truly,
"W. R. Spalding Lumber Company,
"By D. E. Thompson, Manager."

Shortly after the delivery of this letter work on the house was started and the plaintiff began to furnish some of the materials. The house was completed about six months later, a notice of completion being recorded on December 17, 1941. Four partial payments were made as the work progressed, in accordance with the building contract. Each of these payments was for about $1,100, being one-fifth of the contract price. The first three were made from the proceeds of the $3,600 loan and the fourth, which was made early in December, came from the balance of that loan with additional money furnished by the Fradkins. The respective payments were made by the bank with checks payable to Ernie Thompson and the plaintiff. They were delivered to D. E. Thompson, were indorsed by Ernie Thompson, and were then sent to plaintiff's home office in Visalia, where they were deposited.

The home office then sent checks to the various parties who had furnished material and labor, in proportionate amounts. The fifth payment under the contract, amounting to $1,106.36, is still held by the bank pending the outcome of this action. The various liens which were filed, including that of the plaintiff, amount to about $1,260 in excess of the amount held by the bank.

The plaintiff furnished materials to the amount of about $2,500 and has been paid about $1,800. In this action it sought to recover a balance of $731.43 and to foreclose its mechanic's lien. The defendants Fradkin, by answer and cross-complaint, contended that the above quoted letter was a guarantee against any liens, upon which they had relied in entering into the building contract, and that this letter constituted an agreement between the plaintiff and Ernie Thompson to jointly perform that contract. The cross-complaint prayed that the plaintiff be required to pay off all of the liens which had been filed, including its own, it being conceded that upon so doing it should receive the balance still held by the bank.

The court found in all respects in favor of the plaintiff finding, among other things, that Ernie Thompson and the Fradkins entered into the building contract on March 20, 1941; that on June 12, 1941, D. E. Thompson wrote the letter above referred to; that it is not true that this letter was addressed to this bank as an agent for the Fradkins; that it is not true that this letter constituted any guarantee on the part of the plaintiff against the filing of mechanic's liens; that this letter constituted nothing more than an assurance to the bank that all funds paid to the plaintiff in connection with this transaction would be properly disbursed to the persons entitled thereto; that all such funds were so disbursed; that it is not true that the Fradkins relied on said letter when they entered into the building contract; that it is not true that the plaintiff acted jointly with Ernie Thompson in entering into the performance of that contract; that the plaintiff did not participate in the building of this house in any way other than to furnish materials to the contractor; and that it is not true that D. E. Thompson, as manager of the Strathmore yard, was authorized to execute or deliver any agreement of guaranty on behalf of the lumber company.

Judgment was entered awarding the plaintiff $710.28 with

certain interest and ordering the 20 acres sold and the proceeds used to pay this claim and those involved in the other actions, the balance to go to the Fradkins. From this judgment the Fradkins have appealed.

■ Appellants' main contention is that the court erred in finding and holding that the letter of June 12, 1941, was not a faithful performance undertaking and that it did not constitute any guarantee against the filing of liens in connection with this building operation. We are unable to agree with the trial court's interpretation of this letter. Insofar as the writing itself is concerned, we think it is sufficient as a guarantee that no liens would be filed, and that it would run in favor of third persons who furnished labor or materials for this job. (*Woodhead Lumber Co.* v. *Niemann Investments, Inc.,* 99 Cal.App. 456 [278 P. 913].)

■ But, even if we assume that such a guarantee would also run in favor of the appellants as owners of the building, the question remains whether this local branch manager was authorized to bind the plaintiff by writing such a letter. The court found to the contrary and it cannot be held, as a matter of law, that he had such authority. So far as the testimony goes, it supports the finding. It is apparent that this branch manager was attempting to assist his son, the contractor, without regard to the best interests of his employer. He testified that he told the general manager at the home office of the lumber company that the bank desired such a letter, that the general manager made objections but did not definitely instruct him not to write the letter, that he told the general manager he was going to write the letter, and that he did so the next day. The general manager testified that no such conversations occurred, and that he heard nothing and knew nothing of such a letter until shortly before the house was completed. It is significant, in this connection, that this branch manager did not even claim that he had ever sent a copy of this letter to the home office although, according to his testimony, he promptly sent to the home office copies of all papers issued in the usual course of business at that office.

■ Nor does it conclusively appear that there was an ostensible or apparent authority to issue this guarantee. Assuming that such authority could be inferred in connection with the ordinary and usual matters in connection with the business

transacted at that branch office the matter in question appears, on its face, to be an unusual one. That office was engaged in selling certain materials, not in guaranteeing the sales of its competitors and others. It would be unusual, to say the least, for anyone to issue a guarantee in favor of all strangers who might furnish materials or labor for a building in order to get an opportunity to furnish some of the materials. This instrument purported to guarantee bills known to amount to about $5,600, and which actually came to about $7,000, on the condition that the guarantor would be allowed to handle and distribute the $3,600 coming from the loan. There was no provision that it should handle the additional $2,000 supposed to be paid by the owner, and it does not even call for the payment of any balance by the owner. This was not only not the ordinary and usual course of business but the instrument itself discloses infirmities and matters of a suspicious nature which should place anyone intending to rely upon it on his guard. The instrument itself and the general circumstances are sufficient to constitute rather strong evidence against any possible inference of ostensible or implied authority on the part of this branch manager to issue such a guarantee.

It may be further observed that the appellants failed, on their cross-complaint, to prove affirmatively that D. E. Thompson was authorized to make such a contract on behalf of the respondent. (*Mariposa Commercial etc. Co.* v. *Peters,* 215 Cal. 134 [8 P.2d 849].) It is not even claimed that he had written authority, and the most that can be said is that the evidence, on the question of authority, with the reasonable inferences therefrom, is conflicting. Moreover, this is not a case where a principal may be estopped from claiming lack of proper authority on the part of its agent. Not only does the record disclose that several of the essential grounds of estoppel are not here present, but this was apparently recognized by the appellants as estoppel was not pleaded and was not urged either at the trial or on this appeal. It can neither be said that the court's finding as a fact, that there was no authority, is without evidentiary support nor that it is contrary to law.

The appellants next contend that the evidence is insufficient to support the finding and judgment for the respondent in the amount of $709.28. It is argued that this ignores

a credit slip of $313 given by D. E. Thompson to his son at a time near the completion of the job. A copy of this credit slip was sent to the home office of the respondent and this credit was immediately rejected and disallowed. The two Thompsons testified that this credit was given to conform to an agreement between themselves that the respondent would furnish all material needed, of the kinds handled by the respondent, for a certain fixed price. According to their testimony this agreement was made before plans and specifications were prepared and without any list of materials that would be required, and was made on a general estimate based on a square foot basis without reference to the particular kind or quality of materials that would be used. Later, after the contract was entered into between the son and the appellants, and as the materials were furnished from time to time they were billed by the father to the son at the regular prices and copies of the invoices were furnished to the son and sent to the home office. The trial court had the right to disbelieve portions of the testimony of this father and son, the entire matter presents merely a question of fact, and the evidence sufficiently supports the court's finding.

Finally, it is contended that the court erred in imposing a lien upon the entire 20 acres owned by the appellants rather than upon a portion thereof. There is evidence that this dwelling was built because it was necessary to the operation of the ranch and for the purpose of improving and benefiting the entire 20 acres. No abuse of discretion appears. (*California Cor. Culvert Co.* v. *Stewart*, 220 Cal. 104 [29 P.2d 412]; *Anselmo* v. *Sebastiani*, 219 Cal. 292 [26 P.2d 1].)

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.