## Northeast Brick Co. v. Street Road Shopping Center

*Gerald Gornish,* for plaintiff.
*Richard J. Habgood,* for defendant.

BODLEY, J., June 30, 1970.—Claimant in this mechanic's lien action, alleging that approximately $17,000 is due it for labor and materials furnished in and about the construction of defendant's building known as the Bucks County Mall, filed its mechanic's lien claim on November 22, 1967, amended March 21, 1969, upon the entire real estate owned by defendant in the area of Street Road and Bustleton Pike, this county. An answer thereto was filed by defendant on August 6, 1969, and the case has not yet come to trial. However, on April 10, 1970, defendant filed its petition to remove from the lien alleged excess curtilage described therein by metes and bounds. No answer thereto was filed. Hearing was had before the undersigned on May 15, 1970.

The essential facts are not disputed. Defendant, Street Road Shopping Center, Inc., acquired certain ground fronting on Street Road by 12 separate purchases between September 1962 and March 1965. In all, this tract has a frontage of 947.02 feet upon Street Road, and extends in depth 773.03 feet. It contains approximately 17 acres. The main structure on this land is a mall-type building containing within it many individual shops or stores. It was on this structure that claimant did all or practically all of the work for which the money is claimed to be due. The many invoices attached to claimant's claim in support of the alleged indebtedness are dated January 3, 1967, with but a few exceptions which bear dates of March and April 1967. The Bucks County Mall opened for business in May of 1967.

Some time after work was started on the mall operation on Street Road, defendant acquired other lands fronting on Bustleton Pike, no frontage thereof being upon Street Road, and began construction of a shopping center operation early in 1967. This land, which will hereafter be referred to as the Bustleton Pike Section to distinguish it from the mall or Street Road Section, has a frontage of approximately 876 feet on Bustleton Pike. The elevation of the Bustleton Pike Section is approximately 30 to 60 feet higher at various points than the Street Road Section and is connected to the Street Road Mall area by two ramps, one of which is used by cars and the other reserved for commercial trucks. Claimant admits that it performed no brick work upon any of the structures on the Bustleton Pike Section, but claims that it raised certain manholes and did certain work at the car wash building in this section. In support thereof, claimant referred to one invoice dated January 3,

1967, in the sum of $90.30. Defendant disputes this item, saying that construction of the car wash was not begun until April of 1967.

Evidence was adduced at the hearing through testimony of a draftsman employed by the design engineers who created the plan for both the mall or Street Road area and, as well, for the Bustleton Pike Section, tending to show that the design for the structures and parking areas of the Street Road Section was prepared independently of that for the Bustleton Pike Section. Plans received into evidence through this witness support this testimony.

Testimony was also offered on behalf of defendant to show that the Street Road or Mall Section of defendant's land is encumbered by mortgage liens totalling $2,055,542.90 and judgment liens of $908,-592.64, or a total of $2,964,135.54. Apparently, these figures represent the amounts found of record as of the date of hearing, since they were placed in evidence by the president of Chelsea Title and Abstract Company of Pa., Inc., which company had prepared the searches and title abstracts in connection with the financing of both parcels of grounds. John J. McIlhinney, the president of defendant corporation, however, testified that the total was somewhat larger. He stated that the mortgage indebtedness as of the date of hearing was $2,370,000 and that the judgment liens totalled $907,703.24, or a total of $3,277,703.24. This witness also testified as to his estimate of value of the Street Road Section, he being a qualified real estate broker and appraiser of more than 20 years experience. According to McIlhinney, the total value of the land and improvements of the Street Road Section is $4,144,500. By simple arithmetic, it would thus appear that defendant corporation's equity in the Street Road tract is $866,796.76.

Walter E. Stoertz, a real estate broker and appraiser with some 18 years experience in the field, estimated that the value of the Street Road improvements was $3,379,500, and that the value of the Street Road land was $850,000, or a total of $4,229,-500, which sum, it is noted, is somewhat larger than the estimate given by McIlhinney. Stoertz also testified that in his judgment the Bustleton Avenue tract had a value of $1,389,500, $789,500 thereof being assigned to improvements and $600,000 to the land. This testimony as to value was not rebutted, there being none offered on behalf of claimant.

The sole issue to be decided by the court is whether, under the foregoing facts, the mechanic's lien filed by claimant should continue to attach to both the Street Road Section and the Bustleton Pike Section of defendant's real estate or whether, as requested by defendant, the Bustleton Pike Section should be relieved of the lien.

Section 304 of the Mechanics' Lien Law of August 24, 1963, P. L. 1175, 49 PS §1304, provides:

"Where an owner objects that a lien has been claimed against more property than should justly be included therein, the court upon petition may, after hearing by deposition or otherwise, limit the boundaries of the property subject to the lien. Failure to raise this objection preliminarily shall not be a waiver of the right to plead the same as a defense thereafter."

Claimant contends that defendant has waived its right to raise the issue of excess curtilage by reason of its having filed an answer to the claim prior to raising the curtilage question. Claimant contends that the language of the section quoted above requires that this issue be raised by preliminary objec-

tions and that if it is not so raised defendant is limited to pleading the same in his answer and then await resolution of the problem until trial is had.

We cannot agree with plaintiff's contention. The only authority cited by claimant in support of its position is Johnson v. Kusminsky, 287 Pa. 425 (1926). That case had nothing whatsoever to do with the question of curtilage and has no bearing upon this issue. The court in Johnson, on appeal by defendant following trial, verdict and judgment for plaintiff, merely said that an irregularity, lumping of items, raised by defendant on appeal had been waived by his having failed to file a motion to strike the lien and by his filing of an affidavit of defense to the merits of the claim. The case is clearly inapposite.

Although section 304 provides that the objection of excess curtilage may be treated as a defense and is not waived by reason of the failure to object preliminarily, we do not believe that this language requires us to deny a mechanic's lien debtor the right to be heard on the subject before trial merely because an answer to the claim has first been filed. Reason and common sense suggest that the issue, although properly the subject of initial preliminary objections, can nonetheless be raised at any stage of the proceedings so long as trial is not thereby delayed. Particularly, this would seem to be true in a situation like the one before us where the total amount of the claim might be considered nominal in relationship to the value of the property liened. It is altogether reasonable that a mechanic's lien debtor in such a case may well be unconcerned as to the extent of the lien until such time as his financial dealings may lead him to attach some importance to the problem. Accordingly, we reject claimant's contention in this regard.

Section 201 of the Mechanics' Lien Law, 49 PS §1201(2), defines "property" as

"The improvement, the land covered thereby and the lot . . . or curtilage *appurtenant thereto* belonging to the same legal or equitable owner *reasonably needed for the general purposes of and forming a part of a single business* or residential plant." (Italics supplied.)

Thus, the legislature has defined, in necessarily general terms, just what any mechanic's lien claimant, and this claimant in particular, might lien under section 301 of the Mechanics' Lien Law. Our question here is whether or not the Bustleton Pike Section of defendant's real estate can be termed a "curtilage appurtenant" to the Mall or Street Road Section and whether or not the Bustleton Pike Section is "reasonably needed for the general purposes of" the Mall Section. We think it is neither appurtenant to, nor reasonably needed for, the Street Road Section.

"Curtilage" is not defined by the Mechanics' Lien Law. However, Bouvier says that it is: "The enclosed space immediately surrounding a dwelling-house, contained within the same enclosure." Also, a "yard, backside, or piece of ground near a dwelling-house, in which they sow beans, etc. yet distinct from the garden." And, further: "it usually includes the yard, garden, or field which is near to and used in connection with the dwelling": Bouvier's Law Dictionary, 3d Rev., p. 741. Curtilage is also defined as: "A yard, courtyard, or piece of ground, included within the fence surrounding a dwelling house": Webster's New International Dictionary, 2d Ed., Unabridged.

Obviously, usage in the law has attached a much broader meaning to this word than did the historical definitions set forth above. Whatever its original

meaning, we take it that the "curtilage" in the context of the law of mechanics' liens refers to so much of the land surrounding the building which was constructed or improved on that land, and, hence, the source of the indebtedness and the lien, as may be considered reasonably necessary to the economical intended use of the building as well as necessary to maintain the economic value of the same. And if, in this sense, the curtilage must include other land and buildings, not the basis of the claim, but yet reasonably required to secure to the prime land and improvements an integrity of use, and, hence, the highest value, as in the case of a shopping center, all such other buildings and the surrounding land used in connection therewith must be considered as part of the curtilage.

In defining the "property" which may be liened, section 201 says not only is it the improvement and the land covered thereby, and not only the curtilage, but the "curtilage appurtenant thereto." The word "appurtenant" is defined by Webster as ". . . pertaining or belonging legally; — with to . . . Hence: pertinent or appropriate; suited; incident . . . Annexed or pertaining to some more important thing . . ." "Appurtenance" is said to be: "That which belongs to something else; adjunct; appendage; an accessory; something annexed to another thing more worthy."

Considering the idea which is conveyed by the word "curtilage," we can only assume that the apparent redundancy which follows when "appurtenant" is tacked on is but an emphatic expression of the legislature's intent to confine the scope of a mechanic's lien in a reasonable fashion.

And when the statutory definition persists in this vein by saying that the curtilage appurtenant must be

such as is "reasonably needed," etc. (absent a finding of intentional legislative prolixity, which we shun) we must conclude that the lawmakers were making crystal clear to the mechanics what they had already told the lawyers.

Section 301 reveals that it is the improvement which was the beneficiary of the labor and materials expended by claimant which is primarily the intended subject of the lien. The philosophy of such a provision, as in the case of an artisan's lien, would reasonably seem to be that the structure to which such labor and materials were devoted in its construction or improvement, should be the prime security for the debt arising therefrom. And, of course to be a valid lien upon real estate, it must necessarily attach to the land under the structure or, as section 301 puts it, upon "the estate or title of the owner in the property."

A mechanic's lien covers the land which is immediately occupied by the building. However, it cannot be restricted to the exact area of ground upon which the building rests, but must extend to so much of the land as may be necessary to the convenient use and occupation of the building, which is another way of saying the "curtilage appurtenant thereto . . . reasonably needed for the general purposes" thereof. But it cannot be extended so as to include land which is not necessary for the convenient and proper use and occupation of the building, or land which is not properly appurtenant to the building. See 57 C.J.S., sec. 186. And see Wirsing v. Pennsylvania Hotel & Sanitarium Company, 226 Pa. 234, 238 (1910), in which this principle was affirmed under the old Mechanics' Lien Law of June 4, 1901, P. L. 431, where much the same language was used as in the present Mechanics' Lien Law. See also Bicker-

ton v. Vaughn, 38 D. & C. 645 (1940); Knepp v. Orner, 22 D. & C. 391 (1934).

In support of its position, plaintiff cites four cases as authority, but we find none to be controlling or even relevant to the problem at hand. Acme Paving Co., Inc. v. Ferguson, 21 D. & C. 2d 465 (1959), merely held that a subcontractor, unpaid for his services in connection with the paving of the parking lot of a supermarket, the construction of which was required under the contract between defendant owners and the general contractor who constructed the buildings proper, had a right to file his mechanic's lien against the entire supermarket property. Mellon National Bank & Trust Co. v. East Crossroads Center, Inc., 24 D. & C. 2d 128 (1961), was a similar case, holding that the parking area and access roads of a shopping center were necessarily part of the "improvement" and of the curtilage envisioned by the Mechanics' Lien Act of 1901. The case of Nagle v. Garrigues, 46 Pa. Superior Ct. 155 (1911), stands for the principle that a materialman who erroneously filed his mechanic's lien claim against the land on which stood a one-story garage, for which he furnished materials, had the right, by petition, to amend the description of the real estate covered by the lien so as to include the adjoining lot on which stood the dwelling house used by the owner, along with the garage and garage lot, as a single property. It is true, as pointed out by claimant, that the court there stated that the mere fact that two tracts were acquired by the debtor under separate deeds of conveyance does not exempt the second tract (the dwelling house and lot in Nagle) from claimant's right of lien. But it is noted that the court there stated, at page 158, that such was the case in Nagle "in the

face of the other existing facts." On the other hand, we would hold that the mere fact that a debtor owns a second tract of land, if such tract is reasonably separable from the first, does not lead inevitably to a conclusion that such second adjoining tract, or perhaps a third or fourth, may be subjected to the lien, as curtilage, if not reasonably required.

Finally, plaintiff cited Morrissey Construction Co., Inc. v. Cross Realty Co., 42 D. & C. 2d 533 (1967), which held that a mechanic's lien filed against lots and buildings in a housing development, for an indebtedness growing out of the construction of driveways, sidewalks, curbs and the like, was valid notwithstanding the fact that the contractor-plaintiff performed no work upon the construction of the houses themselves. The court held that such paving work was a reasonably necessary, or even an essential, part of the residential construction work and, hence, properly could be termed work furnished in the erection or construction of the improvement itself. It went on to say that such a lien would be upheld whether its validity were to be considered under the Mechanics' Lien Law of 1963 or under the 1901 or 1836 Mechanics' Lien Acts. In summary, we have no quarrel with the law cited, but we find no support in any of these cases for claimant's present position under the facts of the instant case.

As noted heretofore, all of claimant's $17,000 claim, with the possible exception of the invoice for $90.30, grew out of labor and materials furnished in and about the construction of the mall building on the Street Road frontage. The mall building, with the many shops and stores contained therein, along with the adjacent parking areas, is a single business unit within the meaning of the word "property" as defined in section 201, notwithstanding the fact that defend-

ant also owns an adjoining tract upon which additional commercial buildings have been erected. Where, as here, there is a distinct and observable separation between two adjoining parcels of land, although both are owned by the debtor, and where the indebtedness grew out of work done entirely, or nearly so, upon the first parcel, the curtilage subject to the lien filed to secure the debt will be restricted to that parcel, notwithstanding the fact that claimant's security for the debt might possibly be enlarged by permitting the lien to extend over the second parcel. To hold otherwise would be to unnecessarily hamper defendant in his business and financial dealings while giving but a doubtful benefit to claimant. We find that the second or Bustleton Avenue tract therefore, is not "reasonably needed" for the general purposes of the improvements upon the Street Road tract and the lien should be removed therefrom.

I have noted above that credible and competent evidence as to the value of the land and improvements of both tracts was received by the court without objection. Were value to be considered of any importance in the determination of this problem, the court would accept, and, in fact, would be obliged to do so, the unrebutted expert testimony as to value, since the court is not in a position to set values for itself and, hence, must act upon the only credible evidence of value found in the record. See F. W. Woolworth Company Tax Assessment Case, 426 Pa. 583, 586 (1967); Bensalem Township School District v. Bucks County Board of Assessment and Revision of Taxes, 19 Bucks 408, 409-10 (1969).

In his supplemental memorandum of law, plaintiff's counsel argues that the court should have some doubt as to the weight to be given defendant's valuation figures and, hence, doubt with respect to de-

fendant's equity in the mall property. He advances this as an even "more significant reason" for not lifting the lien from the Bustleton Avenue Section. As pointed out immediately above, the only evidence of value offered at the hearing came from entirely qualified and credible witnesses notwithstanding the fact that one such witness was also president of the debtor corporation, and since such evidence is not incompetent nor entirely incredible, we do accept those values.

However, we do not believe that the question of what curtilage may be appurtenant to any particular structure and reasonably needed for the general purposes thereof is in any way resolved by a consideration of the value which may or may not attach to the curtilage. There is, of course, no doubt that value and the debtor's equity in the liened real estate is of prime importance to the lienor, but such considerations are completely collateral to, and not determinative of, the extent of the curtilage within the context of the Mechanics' Lien Law. No authority has been advanced by claimant in support of his argument that the court should properly consider these matters, and we have found none. See however, Gregg v. H & M Drilling Co., 92 Cal. App. 189, 193, 267 Pac. 903, 905 (1928), a California case, in which it was held that the law of curtilage has no relationship to the value of the improved land accompanied by a reasonable curtilage vis-a-vis a greater value which necessarily would attach to the same improvement and a substantially larger parcel of adjoining ground.

For all of the above reasons, we believe that the prayer of defendant's petition must be granted. . . .