## Knepp v. Orner et al.

*Rufus C. Elder*, for plaintiff.
*A. Reed Hayes* and *Harold W. Houck*, for defendants.

UTTLEY, P. J., December 31, 1934.—This is a proceeding, under section 23 of the Mechanic's Lien Act of June 4, 1901, P. L. 431, to have the court make an order or decree defining the curtilage appurtenant to the structure or improvement against which the mechanic's claim or lien in this case is filed.

The proceeding was instituted by the petition of Citizens National Bank, administrator of the estate of O. O. Orner, owner, contractor and defendant in the claim and judgment, alleging that the claim is filed against more real estate than should justly be included therein.

To this petition and the rule issued thereon, H. E. Knepp, the plaintiff, has filed an answer alleging that all the land described in the lien, upon which the structure or improvement in question is erected, was purchased by O. O. Orner, the defendant, with the intention and for the purpose of constructing a hotel building on the north end thereof and using the remainder of the plot to the south as a lawn and grounds for the hotel and its guests, and to maintain a

clear and open view to the south, and that the hotel building and the lawn and grounds, with a brick walk from the hotel building southward to a fountain and pergola erected upon the grounds, were completed in June 1931 and have since been operated together as a single plant or business, and that the plaintiff is therefore entitled to a lien upon all the real estate described in his claim. No replication was filed to the answer. . . .

## Discussion

What constitutes and should be included in the curtilage of a structure, against which a mechanic's claim or lien is filed, is defined in section 3 of the Mechanic's Lien Act of June 4, 1901, P. L. 431, as follows:

"The curtilage appurtenant to the structure or other improvement shall be such as is reasonably needed for the general purpose for which such structure or other improvement was made, and belonging to the same owner, including other structures, whether newly erected, or altered, or changed for such purpose, and forming part of a single business or residential plant."

Applying this section of the act of assembly to the case at bar, it is clear that, before lots nos. 320 to 323 inclusive and the brick walk, fountain, and pergola thereon erected could be included as part of the curtilage appurtenant to Green Gables Hotel, they must be such as are reasonably needed for the general purpose for which the hotel was constructed and form part of a single hotel plant and business.

It is therefore necessary first to ascertain the general purpose for which the building in question was constructed, and in determining this all the authorities hold that great weight must be given to the intention of the owner when he constructed the building: Nelson v. Campbell, 28 Pa. 156; Wirsing v. Pennsylvania Hotel & Sanitarium Co., 226 Pa. 234; Fox's Estate, 16 D. & C. 56.

The intention of O. O. Orner, the owner, as to the amount of land that was to be included in the curtilage, and the purpose to which the land and the structures thereon erected were to be put, appears from his expressions to various persons at the time he purchased the plot in question and during the erection of the improvements thereon, and from the character and location of the structures, the order and manner of their erection, and their use by the owner from the time of their completion until his death.

The testimony of the witnesses to the statements made by O. O. Orner, the owner, on or about May 24, 1930, when he bought the first three lots, nos. 317-319, inclusive, and on or about June 2, 1930, when he bought the last four lots, nos. 320-323, inclusive, and during the erection of the structures on these lots of ground, established pretty clearly his intention then to convert the barn into a hotel and use the remainder of the lots to the south as a lawn and grounds therefor and to protect the view of the hotel from the south, and that with this intention and in accordance with a definite plan he constructed the hotel, brick walk, fountain, and pergola, beautified the grounds south of the hotel and operated the whole as a single plant and business.

It is unnecessary, however, to resort to the statements of the owner to ascertain his intention. The admitted facts in the case, the times of the purchase of the frame barn and the two parcels of land, the architecture of the hotel building, and the location of it and the other improvements on the plot described in the lien as the curtilage, with the order and manner of their construction and their use by the owner after they were completed, are sufficient to make clear his purpose.

O. O. Orner bought the barn to use the lumber therein for billboards, changed

his mind, and on May 24, 1930, purchased the first three lots on which the barn stood for the purpose of converting it into a hotel, and on June 2, 1930, after an interval of only 8 days, purchased the last four lots of ground. He began the construction of the hotel May 27, 1930, and contemporaneously therewith, during the summer and autumn of 1930, constructed the brick walk, fountain, and pergola, completing the same in the fall of 1930 before the hotel, which was not completed and opened for business until June 1931. The improvements on the grounds to the south of the hotel were therefore not an afterthought, but were planned and constructed by the owner along with the hotel and as a part thereof, and the entire plot with the hotel and the other improvements thereon were operated by the owner from their completion in June 1931 until his death February 12, 1932, as a single hotel plant and business. All this leads to the conclusion that O. O. Orner, when he purchased lots nos. 320-323, inclusive, intended them as a part of the curtilage appurtenant to the hotel building he was constructing on lots nos. 317-319, inclusive.

The general purpose for which the structure or improvement in this case was erected, therefore, appears to have been to furnish and operate a tourist hotel of the better class, of attractive design, construction, and equipment, standing in the open with a lawn and grounds connected therewith and a part thereof, which would draw tourists who were willing to pay a higher rate than is charged by the ordinary roadhouse or commercial hotel in a town the size of Lewistown, which has a population of approximately thirteen thousand.

The architecture and design of the hotel building clearly indicates that it was intended to stand in the open with the lawn and the grounds to the south thereof, so that it would be attractive in appearance and visible for a considerable distance north and south on Main Street. The hotel is set back 44 feet 7 inches from the west side of South Main Street, and the whole south side of the building on the first floor consists of French windows looking out over the lawn and grounds to the south, where the brick walk, fountain, and pergola used by the guests of the hotel are located.

To limit the curtilage to lots nos. 317-319, inclusive, as contended by counsel for the petitioner, would allow only 35 feet south of the hotel for grounds, which is insufficient for a hotel of this type and would deprive the guests of the hotel of the view and access to the grounds to the south, on which the brick walk, fountain, and pergola were built along with and as part of the hotel enterprise for the enjoyment of the guests.

We are of opinion, therefore, that the four lots nos. 320 to 323, inclusive, improved and beautified by the shrubbery and hedge, with the brick walk, fountain, and pergola thereon erected, are reasonably needed for the general purpose of this building as a tourist hotel of the type intended by the owner when he erected it. To take from this hotel lots nos. 320-323, inclusive, which have been improved as a part of the hotel plant and business, would greatly depreciate the value of this hotel property and decrease its usefulness for the general purpose for which it was intended.

The cases cited by counsel for the petitioner to sustain his contention that the curtilage in this case should be confined to the three lots of ground upon which the hotel building is erected all differ in essential particulars and can be distinguished from the case at bar.

In Miller v. Lenhart, 1 Pearson 95, the lien was against a brick dwelling, frame slaughterhouse, stable, meat house, and ice house, for materials furnished in the erection of the brick dwelling. The frame slaughterhouse and

stable were erected on a different lot, across the alley from the lot on which the other buildings were erected. Although the dwelling house and other buildings were used by the occupant for the general purpose of his business as a butcher, they were fully susceptible of division and could not be used for any common purpose except by a butcher. The court held the lien invalid because it was against buildings other than that for which the materials were furnished. In the case at bar, the lien is for materials furnished in the construction of the hotel, brick walk, fountain, and pergola, all planned and used for the general purpose of a single hotel plant and business.

In Worthington v. Cambridge Springs Co., 24 Pa. C. C. 281, it was held that a mechanic's lien may not be maintained against a hotel property for material required in equipping a power house located 1700 feet away on an entirely separate lot, the power house having been built, not as a part of the hotel plant alone, but in order to furnish water, light, heat, and power to a town and to individuals. The court stated in this case that the entire plant would have been subject to a mechanic's lien for material furnished in connection with the construction and equipment of the power house if the building had been located on the same property and had been necessary to the perfection of the same general plan and improvements.

In the case under consideration, however, the grounds to the south of the hotel and adjoining the same were beautified and the structures erected thereon as a part of the hotel property and for the exclusive use thereof.

In Wharton Bros. & Co. v. Douglas & Son, 92 Pa. 66, Girard Point Storage Co. v. Southwark Foundry Co., 105 Pa. 248, and Cowan et al. v. Pennsylvania Plate Glass Co., 184 Pa. 16, it was held that a lien could not be sustained against an entire manufacturing plant for materials furnished to one of the buildings of the plant or for a mere addition thereto. These cases refer to a manufacturing plant consisting of a number of buildings, and are clearly distinguished from this case.

It will be noted that all the cases above cited were decided before the passage of the Act of June 4, 1901, P. L. 431, under which this lien was filed.

In Nagle v. Garrigues, 46 Pa. Superior Ct. 155, it was held that where a person purchases two adjoining lots at different times and takes title by different conveyances, and thereafter uses and occupies the two lots with a residence thereon as a single property, and builds upon one of them or partly upon one and partly upon the other a garage, and a mechanic's lien is filed for the building of the garage against one of the lots only, the lien may subsequently be amended so as to include in the description the entire property as used and occupied at the time the garage was built. The Superior Court, in its opinion in the above case, quoted with approval, at page 158, from 1 Trickett, Liens, sec. 35, as follows:

"If several buildings are standing on ground belonging to the same owner, and so related to each other as to subserve a common purpose, a lien for debts contracted in the erection of the one extends to the others, and the building out of whose erection the liens arise, may be either the principal, or a subsidiary building. And the principal and subsidiary buildings may be either conterminous, or may be separated by an interval of space."

In Green Gables, we have the hotel building, brick walk, fountain, and pergola erected upon lots of ground all belonging to the same owner and so related to each other as to subserve the common purpose of a tourist hotel of the better class, with grounds and lawn around it to attract the class of tourists who are willing to pay a higher rate for a hotel with such surroundings. Under the

ruling in the case above cited, therefore, the lien for debts contracted in the erection of the hotel building would extend to the brick walk, fountain, pergola, and the entire plot of ground described in the lien as the curtilage.

Counsel for both the petitioner and the respondent have cited Wirsing v. Pennsylvania Hotel & Sanitarium Co., 226 Pa. 234, which was decided after approval of the Act of 1901, and construes section 3 thereof. In that case it was held that a mechanic's lien may be maintained against a hotel property and a lot separated from the hotel by a railroad and intervening private lands, and distant 225 feet therefrom, where it appears that on the lot was a mineral spring containing waters possessing medicinal properties and that it was the intention of the owner to use the hotel in connection with the spring, as a sanitarium and to construct on the lot where the spring was situated a plant for supplying light, heat, and the waters from the spring to the hotel. Justice Brown, in delivering the opinion of the Supreme Court in the above case, said (p. 238):

"By the Act of June 4, 1901, P. L. 431, curtilage, to be regarded as appurtenant to a building and bound by a mechanic's lien filed against it, is 'such as is reasonably needed for the general purpose' for which the structure is erected, and belongs to the same owner. As a rule, curtilage does not extend beyond the lot on which the building is erected, but when more land is reasonably needed for the general purpose of the structure and at the time the same is being erected the owner of it intends that another lot in addition to the one on which it is being built shall be included in the curtilage and constitute a part of the same, it is reasonable that a mechanic's lien should extend to both. The value of a building after its erection depends upon the ability of the owner, or those claiming under him, to put it to its intended use, and, if it cannot be put to such use without having the curtilage manifestly intended for it by the owner at the time he induced the labor and material to go into it, such curtilage ought to be regarded as appurtenant to it, even if it does include land not physically connected with the lot on which the building is erected. The legislature might have provided otherwise, but it has not by the act of 1901. Under the old mechanic's lien act of June 16, 1836, the lien of a mechanic extended to the ground covered by the building 'and to so much other ground immediately adjacent thereto' as might have been necessary for the ordinary and useful purposes of the building. But there is no such limitation in our present act, and it is, therefore, a question under conditions existing in any particular case what other land of the owner of the building in addition to the lot upon which it is being erected, shall be bound by a mechanic's lien, as being 'reasonably needed for the general purpose' of the structure."

The plaintiff in the case a bar could see that the brick walk, fountain, and pergola were being constructed upon lots of ground nos. 320-323, inclusive, along with and as a part of the hotel building which was being erected on the adjoining lots nos. 317-319, inclusive; that the hotel building, brick walk, fountain, and pergola were intended by the owner to constitute and did constitute a single hotel plant and business; and that the entire plot consisting of lots nos. 317-323, inclusive, was reasonably needed for the general purpose thereof. This would be an inducement to the plaintiff to consider the entire plot of ground with the improvements thereon erected as security for the materials furnished by him, and it is reasonable that the mechanic's lien in this case should include the entire plot consisting of lots nos. 317-323, inclusive, as the curtilage appurtenant to the improvements thereon erected.

From the pleadings and the testimony, and under the rulings of the cases above cited, we find that all the land described in the claim in this case is

reasonably needed for the general purpose of the hotel building and other improvements thereon erected, as a single plant and business, and should be defined as the curtilage appurtenant thereto.

As we have disposed of this case on the merits, it will be unnecessary to consider the contention of the plaintiff and respondent that the judgment upon the mechanic's claim renders the question involved here res adjudicata as to the petitioner.

### Decree

Now, December 31, 1934, upon due consideration, it is hereby ordered, adjudged, and decreed that all the ground described in the mechanic's claim in this case as follows: All that lot of ground situate in the seventh ward of the Borough of Lewistown, County of Mifflin, and State of Pennsylvania, fronting 280 feet on the west side of South Main Street, and extending in depth of equal width 150 feet to a public alley, bounded on the north by "Z" Street, on the east by South Main Street, on the south by land of the Lewistown Housing & Development Company, and on the west by a public alley, is reasonably needed for the general purpose of and is hereby defined and declared to be the curtilage appurtenant to the hotel building and the brick walk, fountain, and pergola connected therewith and constituting a part thereof, erected upon said above described lot of ground. To this opinion and decree A. Reed Hayes, Esq., attorney for the petitioner, excepts, and a bill of exceptions is hereby sealed for the petitioner. The costs of this proceeding to be paid by the petitioner.