**In re SKYLINE PROPERTIES, INC.,**
**d/b/a Hunter's Station, Debtor.**

**CENTURY NATIONAL BANK AND**
**TRUST COMPANY, Plaintiffs,**

**v.**

**SKYLINE PROPERTIES, INC., Mealy**
**Excavating and Construction, Inc., and**
**Diane A. and David Mealy, Defendants.**

**Bankruptcy No. 89–00638E.**
**Adv. No. 89–0091.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 2, 1992.

**832**

Robert J. Taylor, Ambridge, Pa., for Century Nat. Bank and Trust Co.

Susan F. Reiter, Erie, Pa., for Mealy Excavating and Const., Inc. and Diane A. and David Mealy.

## OPINION [1]

WARREN W. BENTZ, Bankruptcy Judge.

This adversary action requires a determination of the status and priority of liens between a mortgage held by Century National Bank and Trust Company ("Bank") and a mechanics' lien filed by the Mealy parties ("Mealy").

### Issues

A. Whether Mealy's mechanics' lien claim complies with the filing, notice and service requirements of the Pennsylvania Mechanics' Lien Law.

B. Whether Mealy's mechanics' lien claim sufficiently identifies the work performed and the prices charged.

C. Whether Mealy's work constitutes "Erection and Construction" or "Alteration and Repairs" as defined in the Mechanics' Lien Law.

D. Whether Mealy's mechanics' lien extends to contiguous parcels of land being developed as part of a single economic enterprise.

E. Whether Mealy's mechanics' lien claim should be prorated among the various properties according to the amount of work performed on each parcel.

### Facts

The Hall family, principals of Skyline Properties, Inc. D/B/A Hunter's Station ("Debtor"), decided to pursue a dream. In early 1987, the Debtor commenced development of the project, an integrated multifaceted resort encompassing numerous adjoining parcels of land totalling approximately 1,000 acres to be known as Hunter's Station. The dream was elusive. We now have before the Court two innocent victims vying for the remnants of the financial failure.

David Mealy learned of the plans for Hunter's Station and contacted the Debtor in an effort to secure a portion of the excavating and grading work for his firm. Based on the size of the anticipated project, Mealy submitted a schedule of discounted rates to the Debtor and subsequently, was engaged to perform work on the project. Mealy commenced visible work on April 20, 1987.

Hunter's Station consists of adjoining parcels of real estate, known as the Penn Central, Forest Resources, Monday, Tionesta Sand and Gravel, Townsend, Davis and Ellis Properties. The properties are named for the grantors to the Debtor for convenience.

The majority of Mealy's work was performed on the Monday, Tionesta Sand and Gravel, and Townsend properties. Some

1. This Opinion constitutes this Court's findings of fact and conclusions of law.

work was done on the Davis and Ellis properties. Mealy did no work on the Penn Central and Forest Resources properties.

Mealy ceased work at Hunter's Station on August 3, 1987. Mealy billed the Debtor a total of $224,696.55, and received payments of $132,741.00.

Mealy filed a mechanics' lien claim (the "Claim") for the balance due, $91,955.55, on September 23, 1987 at No. 8 of 1987 in the Court of Common Pleas for the 37th Judicial District—Forest County Branch. The Claim named the Debtor as the defendant and was served on an officer of the Debtor on September 23, 1987 by the Sheriff of Forest County. The following day, the Sheriff's return of service was filed at the Forest County Courthouse as proof of service. The Claim is liened against the Monday, Tionesta Sand and Gravel, and Townsend parcels.

The Bank had enjoyed a good relationship with the Hall family and their numerous business ventures for many years. On May 12, 1987, after receiving a loan application, representatives of the Bank visited the site of Hunter's Station, viewed the properties, and were shown the plans for development of the resort. At that time, the Bank's representatives anticipated that a great deal of construction would be done and viewed a bulldozer path on either the Monday or Townsend parcel. The Bank, apparently convinced that the project was viable, extended the Debtor $150,000 credit and on June 5, 1987 took as collateral a mortgage on three parcels of the Debtor's property—Monday, Penn Central and Forest Resources.

On October 31, 1988, the Bank filed a mortgage foreclosure action against the Debtor at No. C.D. 121 in Forest County. In September 1989, Mealy obtained a judgment on its Claim and scheduled a Sheriff's sale of the Monday property. The sale was stayed by the filing of an involuntary Petition under Chapter 11 of the Bankruptcy Code against the Debtor on November 9, 1989. The case was converted to a proceeding under Chapter 7 on August 1, 1990.

Both the Bank's mortgage and Mealy's Claim are against the Monday property; thus, the dispute over the validity and priority of Mealy's Claim.

By Memorandum and Order dated February 25, 1991, we determined that Mealy's state court judgment did not serve to bar the within matter under the doctrines of res judicata and collateral estoppel. The state court proceedings involved the validity of Mealy's Claim against the Debtor. The Bank was not a party, nor a party in privity to the state court action. Therefore, the state court proceeding did not resolve the priority of the liens between Mealy and the Bank.

Prior to the time Mealy commenced work, an old farm house, the foundation of a dilapidated barn and a chicken coop existed on the Monday parcel. The farm house, previously used as a residential dwelling, was converted into a sales office by "gutting" the structure and constructing substantial additions to the original dwelling.

The foundation for the barn which had fallen down or been removed now has a building sitting on it which served as a "tack shop" for Hunter's Station. The appearance of both structures completely changed and the use was altogether different.

$42,000 of Mealy's work was performed on the Monday property. Mealy's work on the Monday property consisted of widening the drive, constructing parking areas, digging footers and drainage ditches, removal of the existing chicken coop, grading around the sales office and tack shop, grading the basement of the tack shop, installation of french drains, excavation of the crawl space for new additions to the sales office and the installation of fencing on the property.

The sales office was substantially complete and opened for business on June 4, 1987, one day prior to recording of the Bank's mortgage. Work continued on construction of the tack shop.

Mealy graded the area for a horse barn which was eventually erected on the Townsend property. On the Tionesta Sand and Gravel parcel, Mealy excavated, dug foot-

ers and drainage ditches for a guardhouse which was erected and cleared and put in roadways throughout the parcel.

The Bank asserts that Mealy's Claim is invalid because: 1) it is facially defective; 2) service of notice of the claim was defective; 3) the Claim is based on an unenforceable oral contract; 4) the work performed by Mealy did not constitute new construction; and 5) the lien includes excessive curtilage. The Bank further alleges, in the alternative, that if Mealy's Claim is valid and prior to the Bank, the amount should be limited to the amount owed for work performed on the Monday property. Mealy asserts that the Claim is valid, perfected and is superior to the Bank's mortgage.

### Discussion

I. Compliance with Filing, Notice and Service Requirements.

The requirements for filing and giving notice of a mechanics' lien claim are set forth in § 1502 of the Mechanics' Lien Law, 49 Pa.Stat.Ann. § 1101, et seq.:

(a) Perfection of Lien. To perfect a lien, every claimant must:

(1) file a claim with the prothonotary as provided by this Act within four (4) months after the completion of his work; and

(2) serve written notice of such filing upon the owner within one (1) month after filing, giving the court term and number and date of filing of the claim. An affidavit of service of notice, or the acceptance of service, shall be filed within twenty (20) days after service setting forth the date and manner of service....

49 Pa.Stat.Ann. § 1502 (Purdon 1965).

Mealy completed work on August 3, 1987 and filed the Claim on September 23, 1987. The Claim was filed well within the required four month period.

A copy of the Claim containing the court term, number and date of filing was served upon the Debtor's representative by the Sheriff of Forest County on September 23, 1987.

A copy of the mechanics' lien claim itself served upon the owner constitutes sufficient notice to comply with § 1502(a)(2). *Tesauro v. Baird*, 232 Pa.Super. 185, 335 A.2d 792 (1975); *see also McDermitt Inc. v. Nelson*, 2 Pa.D. & C. 4th 470 (Adams Co.1989); *Laird Lumber Co. v. Billioni*, 13 Pa.D. & C.2d 236 (Mercer Co.1957).

The return of service filed by the Sheriff of Forest County one day after the service of written notice meets the requirement that a proof of service be filed within 20 days of service itself. *J.H. Hommer Lumber Co., Inc. v. Dively*, 401 Pa.Super. 72, 584 A.2d 985 (1990). The return sets forth the date and manner of service as required by § 1502(a)(2) and is so entered on the docket of the Court of Common Pleas.

Thus, Mealy has complied with the requirements of the Mechanics' Lien Law with respect to the filing of a claim and serving notice upon the property owner.

II. Identification of the Claim.

The Bank asserts that Mealy's Claim fails to sufficiently identify a contract between Mealy and the Debtor and that the oral contract may violate the Statute of Frauds as it was anticipated that the contract was potentially for a period of time in excess of one year.

"Unlike many jurisdictions, the Pennsylvania Statute of Frauds does not include a provision for agreements that cannot be performed within one year...." *Kohr v. Kohr*, 271 Pa.Super. 321, 329, n. 3, 413 A.2d 687, 691 (1979) (citations omitted). Neither the Mechanics' Lien Law, nor the Statute of Frauds, prevents Mealy from filing a valid mechanics' lien for the value of work performed, based on an oral contract.

49 Pa.Stat.Ann. § 1503 provides that a mechanics' lien claim shall state:

.    .    .    .    .

(5) if filed by a contractor under a contract or contracts for an agreed sum, an identification of the contract and a general statement of the kind and character of the labor or materials furnished;

(6) in all other cases than that set forth in clause (5) of this section, a detailed statement of the kind and character of the labor or materials furnished, or both, and the prices charged for each thereof;

. . . . .

■■■ The purpose of requiring the statement as set forth in § 1503(6) is to give the owner sufficient information to enable him to determine the correctness of the claim. *J.H. Hommer Lumber Co. Inc. v. Dively,* 401 Pa.Super. 72, 584 A.2d 985 (1990) and *Laird Lumber Co. v. Billioni,* 13 Pa.D. & C.2d 236 (Mercer Co. 1956). Substantial compliance is sufficient, and this is shown to exist wherever enough appears on the face of the statement to point the way to successful inquiry. *Marchak v. McCure,* 176 Pa.Super. 381, 384, 108 A.2d 77, 79 (1954). *See also Tesauro v. Baird,* 232 Pa.Super. 185, 335 A.2d 792 (1975).

Mealy, in compliance with § 1503(6), set forth the following statement:

> The claimant furnished the labor and equipment to build roadways, storm sewers, landscaping and general grading of the premises hereinafter described incidental to the erection, construction, alteration or repair of improvements on the said premises at per hour charges agreed to by the owner.

Mealy initially provided the Debtor a schedule of hourly rates based upon prompt payment for services rendered. When prompt payment was not forthcoming, Mealy provided the Debtor a different rate schedule with increased hourly rates to compensate for slower payment.

The Debtor directed the work Mealy performed. Mealy provided time slips, which the Debtor signed, showing the hours worked each day. From these time slips, Mealy compiled weekly billings which were submitted to the Debtor for payment. The weekly billings provided to the Debtor show, by date, the equipment Mealy provided, the number of hours and the hourly rate for each piece of equipment, and the total amount due. The Debtor had a clear understanding of the work performed and what the hourly charges were.

Mealy's Claim provides sufficient information to enable the owner to determine whether or not it is correct and to defend against it if he concludes otherwise. Identification of the Claim is sufficient.

Even if we had found that Mealy's statement in compliance with § 1503(6) was deficient for reason of lack of detail, which we do not, we would allow an amendment as provided for in § 1504.

### III. "Erection and Construction" or "Alterations and Repairs."

■■■ A mechanics' lien for services which constitute alterations and repairs takes effect and has priority as of the date the mechanics' lien claim is filed. 49 Pa.Stat. Ann. § 1508(b) (Purdon 1965). In the case of erection and construction, the lien of a claim takes effect and has priority "as of the date of the visible commencement upon the ground of the work of erecting or constructing the improvement." 49 Pa.Stat. Ann. § 1508(a) (Purdon 1965).

The within matter involves the following relevant dates:

| | |
|---|---|
| Visible commencement of construction: | April 20, 1987 |
| Bank's mortgage: | June 5, 1987 |
| Mealy Claim filed: | September 23, 1987 |

Thus, if Mealy's work is erection and construction, Mealy's Claim has priority over the Bank; if the work is an alteration or repair, the Bank's mortgage takes priority.

Section 1201(10) of the Mechanics' Lien Law defines "erection and construction" as follows:

> "Erection and construction" means the erection and construction of a new improvement or of a substantial addition to an existing improvement or any adaptation of an existing improvement rendering the same fit for a new or distinct use and effecting a material change in the interior or exterior thereof.

49 Pa.Stat.Ann. § 1201 (Purdon 1965).

The Bank asserts that no buildings were erected nor constructed in conjunction with

Mealy's work and Mealy's lien is for alterations and repairs. Thus, the Bank asserts that Mealy's lien takes priority as of the date of filing of the Claim and not the date of visible commencement of the work.

The two tests generally used by Pennsylvania courts to determine if work done to existing structures constitutes "erection and construction" are set out in *Parker v. Zeider*, 38 Pa.D. & C.3d 481 (Montg.Co. 1985):

> In order to determine whether an addition to a structure is new construction or an alteration or repair, two different yet overlapping tests have generally been employed ... The first such test is whether the addition is substantial enough in its own right to be considered new construction ... The second test ... is the so-called "new use" or "new appearance" test. According to this test, if the new addition creates a significant change in the use or appearance of the existing structure, then the addition can qualify as new construction.

*Parker*, 38 Pa.D. & C.3d 481 at 484.

The concern in determining whether the work is "erection and construction" or "alterations or repairs" is whether a substantial change to the existing structure has occurred such that any third party, such as the Bank, would be on notice that potential liens could exist. A change in the appearance or use of a building is sufficient to give such notice.

In the present case, the evidence reveals that a farmhouse on the Monday property, used a residential dwelling, was converted into a sales office, used to sell memberships or ownership interests in Hunter's Station. The Debtor converted an existing farmhouse into a sales office by essentially "gutting" the structure and constructing additions to the original dwelling. The appearance of the house was transformed into a commercial building and the use was altogether different. The addition to the building made it substantially larger than it had been as a private residence. The additions are substantial enough to be considered new construction. The work was substantially completed and the sales office

opened for business on June 4, 1987, one day *before* the Bank recorded its mortgage. Had the Bank, which was aware of the scope of the planned construction, viewed the property at the time it recorded its mortgage, it would certainly have known that potential liens could exist.

The tack shop, also on the Monday property, was built on existing concrete blocks which had served as the foundation for a building that had previously fallen down or been removed. The tack shop has both a "new use" and a "new appearance" and constitutes erection and construction.

A guardhouse was erected on the Tionesta Sand & Gravel parcel and a horse barn was eventually erected on the Townsend parcel, both clearly erection and construction.

■ Grading and excavation is the type of work which is properly lienable as incident to the erection or construction of an improvement. *See, e.g. Acme Paving Co. Inc. v. Ferguson*, 21 Pa.D. & C.2d 465 (Wash.Co.1959) (construction of parking lot around a supermarket lienable); *Mellon National Bank & Trust Co. v. East Crossroads Center, Inc.*, 24 Pa.D. & C.2d 128 (Allegh.Co.1961) (grading, filling, planning and designing access roads, parking areas, ditches, sewers and drains for shopping center held to be lienable work); and *Sweigart v. Rice–Stevens Corporation*, 38 Pa.D. & C.2d 529 (Del.Co.1965) (grading and paving of a parking lot surrounding a restaurant lienable work).

■ Another way of stating the test utilized by the Pennsylvania courts in determining whether a certain type of work is lienable is whether the work is incident to the erection or construction of an improvement. Mealy graded the area for four structures—the sales office, the tack shop, the horse barn and arena, and the guardhouse. Mealy dug footers and drainage ditches for the sales office and the guardhouse and installed french drains for the tack shop. The work Mealy performed was incident to the construction of these improvements and also designed to enhance their value by building a resort around them.

Mealy's lienable work, incident to the erection and construction of four structures, as opposed to merely alteration and repair, entitles Mealy to a claim which relates back in time to the date upon which visible work commenced and therefore, is prior to the Bank's mortgage interest.

IV. Whether lien extends to commonly owned parcels.

There is some confusion over the extent of the Debtor's land on which Mealy claims a valid mechanics' lien. In one portion of Mealy's Trial Brief, Mealy states "Mealy performed work on all three parcels [Monday, Townsend and Tionesta Sand & Gravel] and as such, the mechanics' lien properly claims an interest in all three of them." In another section of its Trial Brief, Mealy claims "a valid lien on all parcels formerly comprising the Hunter's Station Resort" which consists not only of Monday, Townsend, and Tionesta Sand & Gravel, but also the Davis, Ellis, Penn Central and Forest Resources properties.

■ A mechanics' lien claim properly lies against any structure or improvement and the "curtilage appurtenant thereto." See 49 Pa.Stat.Ann. § 1201(2) (Purdon 1965). Curtilage appurtenant thereto is such as is reasonably needed for the general purposes for which the structure or other improvement was made. Wirsing v. Pennsylvania Hotel & Sanitarium Co., 226 Pa. 234, 75 A. 259 (1910).

■ Hunter's Station, including its sales office, tack shop, horse barn, riding area, camping sites, golf courses, and restaurants constitute a single improvement intended to be an integrated whole, covering all the properties of the Debtor—a 1,000 acre resort. Mealy could have chosen to file its Claim against all of the Debtor's properties.

■ Mealy chose, however, to assert its Claim against only three parcels—Monday, Townsend and Tionesta Sand & Gravel. § 1503(8) provides that the contents of a mechanics' lien claim shall state ... "such description of the improvement and of the property claimed to be subject to the lien as may be reasonably necessary to identify them."

Since Mealy chose to describe only three parcels in its Claim, the Mealy Claim extends only to those parcels—the Monday, Townsend, and Tionesta Sand & Gravel.

*Proration*

■ The Bank asserts that Mealy's Claim against the Monday property should be limited to the amount which reflects the balance due for work performed on the Monday property. The Bank calculates this amount as $17,811.79 or 19.37% of the Claim.

The three parcels upon which Mealy filed its Claim constitute a major portion of one fully integrated resort. The sales office and tack shop on the Monday parcel would be of little use if there were no land to sell on the Tionesta Sand & Gravel parcel or no way to access the lots for sale to prospective buyers. Similarly, the availability of the horse barn and riding area on the Townsend parcel was used to induce prospective buyers to purchase an interest in Hunter's Station.

The economic use of any of the three individual parcels was dependent upon and interrelated with the others. Thus, Mealy's Claim may be asserted in full against the single economic unit consisting of the Monday, Townsend, and Tionesta Sand & Gravel properties. The Claim must, however, be reduced by the amount of work Mealy performed on the Davis, Ellis, Forest Resources and Penn Central properties as Mealy chose not to assert a claim against those properties.

The parties will be given an opportunity to attempt resolution of the amount of the reduction. If such a resolution is not feasible, further hearings will be scheduled to determine the amounts.

An appropriate order will be entered.

ORDER

This 2 day of January, 1992, in accordance with the accompanying OPINION, it shall be, and hereby is, ORDERED as follows:

1. The mechanics' lien claim filed by the Mealy parties on September 23, 1987 at No. 8 of 1987 in the Court of Common Pleas for

the 37th Judicial District—Forest County Branch (the "Claim") is valid and enforceable against the three parcels of property identified in the Claim.

2. The Claim takes priority as of April 20, 1987, the date on which the Mealy parties commenced visible work on the parcels of property identified in the Claim and therefore, takes priority over Century National Bank's mortgage lien.

3. The amount of the Claim must be reduced by any amount which is included in the Claim for work the Mealy parties performed on properties which are not listed in the Claim.

4. The Mealy parties may assert the entire Claim, as adjusted in accordance with ¶ 3 above, against any one or all of the properties listed in the Claim.

5. The parties shall advise the Court, within 30 days, whether they can agree on the amount of the adjustment required by ¶ 3 above. If the parties are unable to reach agreement, a further hearing will be held to determine the appropriate adjustment.

6. This is an interim order and not subject to appeal pending final resolution of the within matters.