**Morehall Contracting Co. v. Brittany Estates Limited Partnership**

55

C.P. of Berks County, nos. 1655-89 A.D., 140-89 M.L.D.

*Henry J. Costa,* for appellant.
*Stephen J. Adams,* for appellee.

ESHELMAN, *J.*, September 1, 1995—This opinion is in support of our order pursuant to Pa.R.C.P. §1925, which found that plaintiff's amended mechanic's lien claim was not divested by the August 6, 1993 sheriff's sale in the above-captioned matter.

This action was commenced by the plaintiff, Morehall Contracting Company Inc. by a mechanic's lien filed on February 24, 1989. Thereafter, Morehall filed a complaint to obtain judgment upon mechanic's lien claim with the Court of Common Pleas of Berks County, Pennsylvania on April 10, 1989.

The mechanic's lien arose out of a construction project on certain real property owned by the defendant Brittany Estates Limited Partnership in Caernarvon Township, Berks County, Pennsylvania. Morehall had performed certain work including excavation, paving and grading work on the property as a subcontractor to Chesterdale Construction. When Chesterdale failed to pay the money owed to Morehall for the work done, Morehall filed the instant action against Brittany as well as breach of contract action against Brittany and Chesterdale.

Brittany responded to Morehall's complaint by filing preliminary objections in the nature of a demurrer. In its preliminary objections, Brittany argued that the mechanic's lien should be stricken because the work performed by Morehall was beyond the scope of the Mechanic's Lien Law of 1963 because it was not incidental to the erection or construction of a building or improvement. Brittany filed no other preliminary objections. By order of this court dated June 13, 1993, Brittany's preliminary objections were sustained and the mechanic's lien claim was dismissed without prejudice.

On July 3, 1989, Morehall filed an amended mechanic's lien claim and an amended complaint to obtain judgment upon mechanic's lien claim. Brittany once again filed preliminary objections to the amended claim alleging the work performed by Morehall was outside

the scope of the Mechanic's Lien Law. Once again, this court sustained Brittany's demurrer and ordered the amended claim stricken in an order dated September 11, 1989.

On October 6, 1989, Morehall filed a timely notice of appeal to the Pennsylvania Superior Court appealing the dismissal of the amended claim. After briefing and argument by the parties, the Superior Court reversed this court's order of September 11, 1989. The amended claim was reinstated nunc pro tunc to February 2, 1989 pursuant to this court's order dated November 21, 1991.

Following the reinstatement of the amended claim, Brittany filed an answer with new matter to the amended claim. Morehall responded with its reply to new matter on or about January 2, 1992, thereby closing the pleadings in this matter.

On or about February 27, 1992, Brittany filed a motion for summary judgment alleging, inter alia, that Morehall's lien should be stricken because it failed to apportion the lien as to the various improvements on the property. In support of its argument, Brittany argued that Morehall's lien constitutes an impermissible blanket lien over areas for which Morehall had no contract and performed no work. Those areas referred to were Phases II and III of the property.

Morehall filed a response to Brittany's motion for summary judgment arguing that the lien was properly filed against the entire tract because no plan of any sort had been filed in the Berks County Court of Common Pleas Recorder of Deeds Office describing the phases of the development and the improvements to be constructed thereon. By order of this court dated April 15, 1992, Brittany's motion for summary judgment was denied. On July 21, 1993, a certificate of readiness for trial was filed by Morehall and the case was listed for trial.

Subsequent to the filing of the mechanic's lien claim, Brittany apparently entered into a construction loan agreement with Meridian Mortgage Corporation, MMC. As security for this loan, Brittany executed a promissory note and mortgage in favor of MMC on December 18, 1989 covering Phase I and Phase II of the property at issue herein. Brittany later gave a mortgage to MMC on Phase III of the property as additional security for the agreement.

On January 14, 1992, a series of assignments of Phases I and II mortgage and the Phase III mortgage began whereby MMC assigned the mortgages to Meridian Bank who then assigned them to Meridian Asset Servicing Corporation on June 22, 1993, which in turn assigned the mortgages to petitioner, MASC-PA Properties on August 4, 1993.

Brittany apparently was financially unable to comply with the terms of the construction loan agreement and thereafter defaulted on the agreement, the note and the two mortgages. MASC confesses judgment on the note on April 20, 1993. MASC received a judgment on the note and filed a writ of execution with respect to Phases I and II. A sheriff's sale took place on August 6, 1993 and MASC, the successor to the mortgage, was the apparent successful bidder. MASC now claims that it is the legal owner of Phases I and II.

MASC filed a petition for allowance to intervene to raise two issues with respect to Morehall's lien on the property. First, MASC argued that Morehall's lien with respect to Phases I and II was divested by the August 6, 1993 sheriff's sale. Second, MASC argues that Morehall's lien with respect to Phases II and III should be stricken as affecting excess curtilage. This court granted MASC's petition to intervene and later denied MASC's preliminary objections by order dated January 11, 1995.

Following the denial of MASC's preliminary objections, Morehall filed a motion for summary judgment arguing that no genuine issue of material fact existed with respect to the lien filed against Brittany Estates. This court granted Morehall's motion for summary judgment by order dated April 19, 1995, in the amount of $121,058.86.

Thereafter, MASC filed its own motion for partial summary judgment asserting that Morehall's lien as to Phases I and II was divested by the sheriff's sale on MASC's junior mortgage. MASC's motion was subsequently denied.

Finally, Valley Ponds Limited Partnership filed a petition seeking intervention in this action based on an assignment of MASC's interest in the Phase III mortgage. Morehall has opposed Valley Ponds' intervention unless it is limited to the pursuit of the excess curtilage argument previously raised by Valley Ponds' assignor, MASC. Valley Ponds attended the trial as interested parties. In ruling, this court denied Valley Ponds' petition to intervene.

## STIPULATED FACTS

The following facts were stipulated to by counsel for plaintiff and intervenor and were entered into evidence at the time of trial and are hereby incorporated:

(1) On September 27, 1988, plaintiff Morehall Contracting Company Inc. entered into a contract with Chesterdale Construction Company, the Chesterdale contract, pursuant to which Morehall was to perform certain work on certain real property owned by defendant Brittany Estates Limited Partnership, which property is situate in Caernarvon Township, Berks County, Pennsylvania. A true and correct copy of the Chesterdale contract, together with copies of all exhibits and drawings incorporated therein by reference, is attached hereto as exhibit "A."

(2) The property is more particularly described in that certain deed dated October 21, 1987 from Nathan G. Stoltzfus and Marian R. Stoltzfus to Brittany, which deed was recorded in the Berks County records on October 21, 1987 at deed book volume 1972, page 2024. A true and correct copy of this deed is attached hereto as exhibit "B."

(3) The property is comprised solely of three phases known as "Phase I," "Phase II," and "Phase III."

(4) Separate legal descriptions of Phases I and II and Phase III are attached hereto, respectively, as exhibits "C" and "D." The legal description of Phases I and II was prepared by Mast Engineering and was first filed in the Berks County records on August 8, 1991 as an exhibit to the Phase III mortgage, hereinafter defined.

(5) Morehall commenced active construction under the Chesterdale contract on the property on September 23, 1988.

(6) (a) On November 7, 1988, Brittany recorded final subdivision plans for Phase I and Phase II with the Recorder of Deeds Office for Berks County, Pennsylvania. True and correct copies of the final subdivision plans are attached hereto collectively as exhibit "E." The final subdivision plan with respect to Phase II was subsequently amended. A copy of the amended final subdivision plan of Phase II, recorded on July 21, 1989 at plan book 164, page 25, is also included as part of exhibit "E."

(b) Neither a preliminary nor a final subdivision plan has ever been filed with the Planning Commission of Caernarvon Township, the Berks County Planning Commission or the Berks County Recorder of Deeds Office with respect to Phase III.

(c) A true and correct copy of the Land Subdivision and Land Development Ordinance in effect in Caer-

narvon Township at all times relevant hereto is attached hereto as exhibit "F."

(7) Morehall performed work in areas that were encompassed within the boundary lines of Phase I and Phase II as shown on the recorded final subdivision plans.

(8) Certain disputes arose between Morehall and Chesterdale and Morehall ceased work under the Chesterdale contract and demanded payment for work already performed.

(9) On February 24, 1989, Morehall commenced the above-captioned action by filing a mechanic's lien claim with the Court of Common Pleas of Berks County, no. 140-89 M.L.D., against the entire property.

(10) On or about April 10, 1989, Morehall filed a complaint to obtain judgment upon mechanic's lien claim with the Court of Common Pleas of Berks County, Pennsylvania, no. 1655-89 A.D.

(11) Brittany filed preliminary objections to the mechanic's lien claim and the complaint and, by order of this court dated June 9, 1989, and entered June 12, 1989, the mechanic's lien claim was stricken and the demurrer to the complaint was sustained.

(12) On July 3, 1989, Morehall filed an amended mechanic's lien claim against the property and an amended complaint to obtain judgment upon the mechanic's lien claim.

(13) Brittany filed preliminary objections to the amended mechanic's lien claim and amended complaint and, by order of this court dated September 11, 1989 entered September 13, 1989, the amended mechanic's lien claim was stricken and the demurrer to the amended complaint was sustained.

(14) On October 6, 1989, Morehall filed a notice of appeal with this court appealing the September 11, 1989 order.

(15) Also on October 6, 1989, Morehall filed a petition to stay the September 11, 1989 order pending the resolution of the appeal.

(16) On or about December 18, 1989, Brittany and Meridian Mortgage Corporation entered into a construction loan agreement pursuant to which MMC agreed to advance to Brittany up to $7,500,000 on certain terms and conditions.

(17) To evidence its obligation to repay any advances made pursuant to the construction loan agreement, Brittany executed and delivered to MMC its promissory note in the aggregate principal amount of $7,500,000. A true and correct copy of the note is attached hereto as exhibit "G."

(18) To secure payment of its obligations to MMC under the note, Brittany delivered to MMC a mortgage dated December 18, 1989 (as subsequently modified by that certain mortgage modification agreement dated July 8, 1991 between MMC and Brittany and recorded in the Berks County record book volume 2230, page 1219, the "Phase I/II mortgage") covering Phase I and Phase II. A true and correct copy of the Phase I/II mortgage is attached hereto as exhibit "H."

(19) The Phase I/II mortgage was recorded on December 20, 1989 with the Office of the Recorder of Deeds in and for Berks County, Pennsylvania, at record book volume 2112, page 122.

(20) By order of this court dated January 10, 1990, Morehall's petition to stay the September 11, 1989 order was denied.

(21) Subsequent to the recording of the Phase I/II mortgage, the Pennsylvania Superior Court reversed this court's September 11, 1989 order that had stricken the amended mechanic's lien claim.

(22) By order of this court dated November 21, 1991 and entered November 22, 1991, the amended me-

chanic's lien claim was reinstated nunc pro tunc to February 2, 1989.

(23) As additional collateral for the note, on or about July 15, 1991, Brittany executed and delivered to MMC a mortgage covering Phase III. A true and correct copy of the Phase III mortgage is attached as exhibit "I."

(24) The Phase III mortgage was recorded on August 8, 1991 with the Office of the Recorder of Deeds in and for Berks County, Pennsylvania at record book volume 2230, page 1208.

(25) MASC succeeded to all of MMC's right, title and interest in and to the Phase I/II mortgage and Phase III mortgage.

(26) Brittany defaulted on its obligations to MASC under the construction loan agreement, note, Phase I/II mortgage and Phase III mortgage and MASC, through its predecessors in interest, confessed judgment on the note on or about April 20, 1993 by filing a complaint for confession of judgment with the Court of Common Pleas of Berks County encaptioned *Meridian Bank v. Brittany Estates Limited Partnership,* nos. 1971-93 A.D., 2653-93 J.D. and 298-93 E.D.

(27) After entry of judgment on the note, MASC, through its predecessors in interest, caused a writ of execution to be issued with respect to Phases I and II (excepting therefrom certain townhouse and condominium units that had been sold by Brittany and released from the lien of the Phase I/II mortgage prior to the foreclosure, the excepted units) and a sheriff's sale of Phase I and Phase II, less the excepted units, was scheduled by the Sheriff of Berks County for July 8, 1993, which sale was subsequently continued to August 6, 1993.

(28) As required by Pa.R.C.P. 3129.1 and 3129.2, MASC, through its predecessors in interest, provided

notice of the sheriff's sale to all parties having an interest in Phases I and II, including Morehall.

(29) Morehall received notice of the sheriff's sale of Phases I and II, less the excepted units.

(30) Notice of the sheriff's sale was also given by publication by the sheriff once a week for three successive weeks in a newspaper of general circulation in Berks County and in Berks County L.J., as required by Pa.R.C.P. 3129.2(d).

(31) On August 6, 1993, MASC was the successful bidder at the sheriff's sale of Phase I and Phase II, less the excepted units, and became the fee owner of Phase I and Phase II, less the excepted units.

(32) A sheriff's deed conveying Phase I and Phase II, less the excepted units, to MASC was recorded on August 11, 1993 in the Office of the Recorder of Deeds in and for Berks County, Pennsylvania at record book volume 2246, page 35. A true and correct copy of this deed is attached hereto as exhibit "J."

(33) On or about October 8, 1993, MASC filed a petition for allowance to intervene in this case, which petition was granted by order of this court dated April 18, 1994.

(34) On or about April 20, 1995, this court entered an order granting Morehall's motion for summary judgment on its amended complaint against Brittany and judgment was entered in favor of Morehall and against Brittany at Berks County judgment docket no. 1624-95 in the amount of $121,058.86.

(35) As of the date of trial, Brittany is the record fee owner of Phase III.

(36) MASC and Morehall stipulated to the admission into evidence at trial of exhibits "A" through "J."

## CONCLUSIONS OF LAW

(1) Morehall Contracting Company Inc. has a valid mechanic's lien against the entire 55 acre tract of land comprising the Brittany Estates development, the property, by reason of the summary judgment entered in its favor in this action.

(2) A lien upon real estate may not be divested by a judicial sale of the encumbered property if the lien is specifically preserved by statute or because of the peculiar nature of the encumbrance. *Carson Consumer Discount Co. of New Castle v. Stuble,* 348 Pa. Super. 221, 501 A.2d 1150 (1985).

(3) Morehall's lien was not divested by the sheriff's sale on MASC's junior note because at the time of the sale, Morehall held only a mechanic's lien claim which had not been reduced to judgment and there was no "fund" created because the property was "bought in" for "costs" by a successor to mortgagee who is not a bona fide purchaser for value.

(4) Intervenor MASC-PA Properties Inc. has failed to meet its burden to prove that Morehall's lien as to Phases I and II, less the excepted units, of the property was divested by the sheriff's sale of the junior mortgage held by MASC.

(5) Based on the deed filed of record in the Berks County Recorder of Deeds Office at the time of filing of the mechanic's lien claim, Morehall properly filed its lien against the entire 55 acre tract of land comprising the property.

(6) Intervenor(s) MASC (and Valley Ponds Limited Partnership) has (have) failed to meet its (their) burden to prove that Morehall's lien affects excess curtilage as it relates to Phase III of the property.

(7) Valley Ponds lacks standing to challenge the validity of Morehall's lien as to Phase III because a mechanic's lien is a res inter alios acta as to all but the

parties to the action and therefore, only those entities who are parties to the action have the right to contest the validity of the lien. *Drake v. Stout,* 282 Pa. 223, 127 A. 629 (1925); *Knoell v. Carey,* 291 Pa. 531, 132 A. 702 (1928).

## DISCUSSION

Although there are traces of it in Roman law, and it found a place in Code Napoleon, the mechanic's lien, as we know it, is said to have had an origin quite different. It originated, we are told by good authority, with the desire of Messrs. Jefferson and Madison to see the infant city of Washington developed. To encourage the improvement of vacant lots, they persuaded the Maryland Legislature to enact that the contractor should have a lien on property for the amount due him for the erection of a building thereon, thus was the foundation laid for the vast superstructure that looms so large in our park of statutory institutions.[1] As Glenn points out, our founding fathers perceived a need for mechanic's lien and felt implementation was necessary for ongoing development in this country to continue. This court, therefore must not lightly dismiss plaintiff's claims.

MASC has argued that the sheriff's sale of August 6, 1993 on MASC's junior lien divested Morehall's senior mechanic's lien claim as to Phases I and II, less the excepted units. In support of this argument, MASC relies upon the general rule that a sheriff's sale on any lien divests all prior and subsequent liens on the property sold.

However, under Pennsylvania law, a lien upon real estate may not be divested by a judicial sale of the encumbered property if the lien is specifically preserved by statute or because of the peculiar nature of the encumbrance. *Carson Consumer Discount Co. of New*

---

1. Garrard Glenn, Glenn on Liquidation §521, 744 (1935).

*Castle v. Stuble, supra.* It is the peculiar nature of Morehall's lien which dictates that the lien was not divested by MASC's sale of Phases I and II.

Morehall filed its mechanic's lien claim against the entire parcel known as Brittany Estates on February 24, 1989. (Stipulation no. 9.) Morehall moved to reduce its lien to judgment by filing a complaint to obtain judgment on mechanic's lien claim on or about April 10, 1989. (Stipulation no. 10.) However, Morehall's lien was not reduced to judgment until April 19, 1995.

Because Morehall's mechanic's lien was inchoate and had not been reduced to judgment at the time of the sale, MASC's argument as to the divestment of the lien must fail. Typically, a lien filed as an encumbrance against real property is the result of a judgment which the claimant has secured against the owner of the property. Under these circumstances, the lienholder's entitlement to the amount of the lien is established by the judgment entered in favor of the lienholder. A mechanic's lien presents a unique situation whereby a claimant is permitted to lien real property without first obtaining a judgment stating that the amount is owed.

This distinction between a mechanic's lien and a typical judgment lien is critical to the resolution of MASC's preliminary objections. MASC argues that Morehall was required to appear at the sheriff's sale held on Phases I and II to protect its interest in the property. Ostensibly, the reasoning behind this argument is that Morehall, as a lienholder, would have been able to bid the amount of its lien at the sale. If no other bidder matched Morehall's bid, Morehall would take the property in satisfaction of the lien. Alternatively, if Morehall was outbid, a fund would be created out of which Morehall's lien would be satisfied. However, the flaw in this argument is that it erroneously presupposes that Morehall would have been able to freely bid the amount of its lien at the sale.

At the time of the sale, Morehall held nothing more than a mechanic's lien *claim* against the property. As stated above, the lien had not been reduced to judgment. Had Morehall's claim been reduced to judgment, it would have been able to bid at the sale. However, without a judgment in hand, Morehall lacked the judicial security available to the typical lienholder. It was therefore impossible for Morehall to appear at the sheriff's sale and bid the amount of its lien. Under this very unique situation, Morehall's lien on the property, which was not yet secured by a judgment, would not be divested by the sale.

MASC cites several cases in its brief which discuss the general proposition that a lien on property is divested by a sheriff's sale on that property, unless such liens are preserved by statute. However, none of these cases addresses the specific situation at issue here, *i.e.,* whether a *senior* mechanic's lien, *which has not been reduced to judgment,* is divested by a sheriff's sale. Therefore, they provide no support for the argument advanced by MASC.

Given the unique nature of the mechanic's lien claim, this senior mechanic's lien which had not been reduced to judgment, in a situation where there is no fund created because the property was "bought in" for costs by a successor to the mortgagee, who is not a bona fide purchaser for value, cannot be divested by the sheriff's sale of the property. Therefore, MASC's argument as to the divestment of the lien on Phases I and II must be dismissed and judgment entered in favor of Morehall.[2] Moreover, it would be a case of unjust enrichment

---

2. It must be noted that MASC's argument as to the divestment of the lien has been rejected twice by this court; once in the context of MASC's preliminary objections and secondly, in MASC's motion for partial summary judgment. Given that MASC has not presented any new evidence to support its position, the argument must again fail.

to allow MASC to own the property divested of the lien under these circumstances.

Next, we address the excess curtilage argument.

When MASC was permitted to intervene in this matter, it argued that Morehall's lien as to Phase III of the property must be stricken as affecting excess curtilage. Specifically, MASC petitioned this court to limit the boundaries of the property subject to the lien, asserting that the "equities of this case dictate that Morehall's mechanic's lien claim be disallowed as to Phase III and that the boundaries of the property subject to the lien be limited to Phases I and II as outlined in the final subdivision plans." MASC's argument has now been resurrected by its assignee, Valley Ponds. However, the argument is not supported by the facts or the law and must once again be dismissed.

It must be understood, initially, that on February 24, 1989 when Morehall filed its mechanic's lien the only legal description of the property available was that referred to in the deed from Nathan G. and Marian R. Stoltzfus to Brittany Estates. Separate legal descriptions for Phases I, II and III were not of record at the time when the lien was filed. (Stipulation of fact, ¶4.)[3] Indeed, the owner of the property did not disclose any description of what Phases I and II were until December 20, 1989, 10 months later, when the description was filed as an exhibit to the Phase I/II mortgage. Further, the legal description for Phase III was not filed until August 8, 1991, two and one-half years after the lien was filed, and then again only as an exhibit to the Phase III mortgage. No final subdivision plan has ever been filed as to Phase III. Therefore, at the time that Morehall performed its work and filed its lien, there

---

3. "Final" subdivision plans had been filed on November 7, 1988, but these "final" plans were subsequently amended on July 21, 1989, five months after the mechanic's lien was filed.

70

was only one tract of land—the 55 acre parcel described in exhibit "B" to the stipulation of facts.

In *Skyline Properties,* the court held that a mechanic's lien claimant that performed construction work on several of the parcels compromising a 1,000 acre resort could file its lien claim against all of the parcels comprising the resort. *In re Skyline Properties Inc.,* 134 B.R. 830 (W.D. Pa. 1992). The facts in this case are even more favorable to the plaintiff, because as previously noted, at the time the lien was commenced, there was only one tract of land which compromised the project. There was no legal description of a Phases I, II or III on file with the county. In fact, no preliminary or final subdivision plan has *ever* been filed on Phase III. Following the logic of the *Skyline* decision it is very apparent that a lien on Phase III is absolutely proper, and that in fact Phase III is really part of the overall tract of land that also contains Phases I and II.

MASC has argued and presumably Valley Ponds argues that Phases I and II are distinct and severable from Phase III and that there is a distinct and observable separation of Phases I and II from Phase III. However, the facts do not support these assertions. Indeed, the opposite is true. The property was open farmland when the work commenced and the lien was filed. There is nothing "observable" about this open land which would indicate the borderline where one phase ends and the other begins. Indeed, it is only the legal description, and legal action of filing the legal description, which delineates the artificial boundaries between the phases.

The decision in *Northeast Brick Co. v. Street Road Shopping Center,* 50 D.&C.2d 614 (Bucks 1970) supports Morehall's position on this issue. In *Northeast Brick,* the owner had purchased 17 acres of ground by 12 separate purchases, the mall property. After the

contractor started work on the mall property, the owner acquired additional land, the Bustleton Pike section, which shared some of its boundaries with the mall property. The Bustleton Pike section, however, was 30 to 60 feet higher than the mall property and was connected to the mall property by a series of ramps. The shopping complexes constructed on each of these properties were connected only by the ramps. The court determined that this after-acquired, physically and economically separate tract was not properly the subject of the lien for work performed on the mall property.

The *Northeast Brick* court had to determine which of the 13 legally and physically separate parcels should be included within the lien. The court held:

"Where, as here, there is a distinct and observable separation between [the] two adjoining parcels of land, although both are owned by the debtor, and where the indebtedness grew out of work done entirely, or nearly so, upon the first parcel, the curtilage subject to the lien filed to secure the debt will be restricted to that parcel, notwithstanding the fact that claimant's security for the debt might possibly be enlarged by permitting the lien to extend over the second parcel." *Id.* at 625.

This issue arose only because there were at least 13 separately described parcels when the lien attached. Further, the Bustleton Pike section against which the lien was also asserted did not belong to the owner at the time the work began.

The case sub judice presents the opposite issue, and yields the opposite result. When the work began and the lien attached, there was only one tract. There was no separate legal description or separate tracts until after the lien attached.

If this court were to accept the excess curtilage argument by MASC and Valley Ponds, it would permit an owner to divest a mechanic's lien on part of a larger parcel by simply subdividing it and asserting that the

alienated parcel was therefore not necessary to the use of the remaining land. This could, in effect, divest the lien of any real value if the equity in the retained land did not exceed the value of the lien. This clearly is not the intention of the act.

Section 1201 defined "property" as "the improvement the land covered thereby and the lot or curtilage appurtenant thereto belonging to the same or legal or equitable owner reasonably needed for the general purposes thereof and forming a part of a single business or residential plant." 49 Pa.C.S. §1201(b).

The *Northeast Brick* court cited Webster's Dictionary for the definition of "appurtenant," and found that it meant "that which belongs to something else; adjunct; appendage; an accessory; something annexed to another thing more worthy." *Id.* at 621. The court went further, stating that the lien "must extend to so much of the land as may be necessary to the convenient use and occupation of the building, which is another way of saying the 'curtilage appurtenant thereto . . . reasonably needed for the general purposes' thereof." *Id.* at 622. It is clear that since there was only one parcel at the time the lien attached, that the entire tract, including what was to become Phase III, was adjunct, appended and annexed to Phases I and II.

A mechanic's lien is a res inter alios acta as to all but the parties to the lien. *Drake v. Stout, supra; Knoell v. Carey, supra.* Simply stated, only those entities that are parties to the lien have standing to challenge the validity of the lien.

In this case, although Valley Ponds is currently a mortgage holder on Phase III, it is not the owner of the property. The record holder of Phase III is Brittany Estates, Limited Partnership.

Section 1304 of the Mechanic's Lien Law permits the "owner" to raise the issue of excess curtilage in defense of a lien. Therefore, the right to challenge the

lien rests with the owner, Brittany. Brittany raised this argument several years ago in the early stages of this action in the context of a motion for summary judgment. The argument was rejected. More importantly, Morehall has received a judgment against Brittany on the mechanic's lien thereby foreclosing any argument that Morehall is not entitled to enforce the lien against the property owned by Brittany.[4]

Based on the foregoing, Valley Ponds lacks standing to challenge the validity of Morehall's lien against Phase III of the property.

For all of the reasons discussed above and in consideration of all the competing interests at hand, we find our order to be proper.

---

4. Valley Ponds had argued that the comment of the Joint State Government Commission 1964 Report extends the right to enforce excess curtilage to a lienholder such as Valley Ponds. However, this issue is moot given the judgment in favor of Morehall against Brittany.